## 50000. HARPE v. THE STATE.

STOLZ, Judge.

This appeal was taken from Criminal Action Number 637, Page 107, the Superior Court of Meriwether County, Georgia, wherein the appellant was convicted by the jury on charges of violating the Georgia Drug Abuse Control Act by unlawfully distributing and selling to G. O. Johnson a certain drug of abuse, to wit: hashish oil.

In May, 1974, Johnson and James Neil Bowers were employed by the Columbus City Police Department as detectives in the Narcotics Division. Sometime during May, 1974, the two agents became affiliated with law enforcement agencies in Harris and Meriwether Counties, Georgia, and began conducting an undercover operation in concert with such authorities in their respective counties.

In the first part of May, 1974, agents Johnson and Bowers enlisted the services of a man named Ray Dameron as a sworn deputy of the Harris County Sheriff's Department, to aid them in their undercover operation.

During the course of the undercover operation, agent Dameron mentioned the accused's name to agents Johnson and Bowers and "told us about the residence that Reg Harpe was living in." Dameron advised his partners to "check that residence out," in the context of purchasing drugs.

Agent Dameron subsequently took agents Johnson and Bowers to the accused's residence and introduced them to the accused's roommate, who in turn introduced the agents to the accused. At this meeting, agents Johnson and Bowers represented themselves as "dope

pushers."

From the latter part of May through the month of June, 1974, agents Johnson and Bowers talked with the accused on several occasions about drugs, etc. However, the agents did not approach the accused for the purpose of buying contraband until agent Ray Dameron "told us to go there" and buy contraband (Exhibit No. 1, a vial of hashish oil).

On the 29th day of June, 1974, agents Johnson and Bowers approached the accused at his house and inquired about the possibility of obtaining some hashish oil. The accused complied and sold to Johnson "one plastic vial sealed with a black rubber type cap of hashish oil for the price of $30." On the day in question, the two agents did not have to use any persuasion on the accused to supply them with the item of contraband identified as State's Exhibit No. 1.

During the trial in chief, the defendant asserted a defense of entrapment, claiming that he had been contacted by agent Dameron, who represented himself as a law officer by showing his badge and credentials, and sought the defendant's assistance in catching two big dope pushers from Atlanta who had just moved to Columbus (agents Johnson and Bowers). The defendant further testified that agent Dameron had furnished him with the contraband for sale to the "dope pushers," Johnson and Bowers, and that he had given the proceeds of the sale to agent Dameron.

The state failed to produce the agent named Ray Dameron as a witness for the state, and the defendant's subpoena for agent Dameron was never served because of the failure of the defendant's counsel to pay the sheriff a fee therefor.

The accused was arrested on August 7, 1974, and charged with the offense of violating the Georgia Drug Abuse Control Act and indicted by the grand jury for said offense.

The appellant was tried and convicted in a trial in chief. He appeals to this court from the judgment of conviction and sentence entered therein.

1. The trial judge gave the jury a charge on the law of entrapment. He also charged the jury that they must find

the defendant *guilty beyond a reasonable doubt* in order to convict. The trial judge *did not charge* that the prosecution should prove all of the elements of the alleged crime, *including the lack of entrapment.* This omission brings this case squarely within the rule expressed in *Reed v. State,* 130 Ga. App. 659, 662 (2) (204 SE2d 335). As stated therein, "In reply to the state's contention that the general instruction on the burden of proof eliminates the need for a separate instruction, we reiterate that a lay mind may not interpret that instruction as applying to all the elements of the crime. Rather than lessen the possibility that the jury was confused as to the burden of proof, the general instruction augmented that possibility. We cannot assume that the jury carried the import of the general instruction into each and every element of the offense. Notaro v. United States, 363 F2d 169, supra, p. 176. Thus the courts should charge that the prosecution should prove all of the elements of the alleged crime, including the lack of entrapment, beyond a reasonable doubt." See also United States v. Mosley, 496 F2d 1012 (3).

2. As noted in the statement of the case, supra, the essence of the defendant's plea of entrapment is that he was inveigled by a state agent (Dameron) to sell narcotics to two other state agents (Johnson and Bowers) under the guise of assisting the state in obtaining evidence against Johnson and Bowers. This evidence from the defendant was uncontested by the state and in fact corroborated by the state's witnesses, Johnson and Bowers. These facts bring the case within the rule expressed in United States v. Bueno, 447 F2d 903, where it was held that under such facts the defendant *could not be convicted* absent some contradiction of the defendant's testimony. (See United States v. Oquendo, 490 F2d 161, where there *was* rebuttal testimony *denying* the defendant's evidence.) The factual situation before us is even stronger than that presented in Bueno, supra. In that case, at p. 905, the court found that "there is no indication that this was an overall design of the law enforcement people. There is no evidence from which to infer that the purchasing agent knew of this activity of the informer, who was employed only on a temporary basis." The uncontroverted evidence in the

case sub judice shows that the entire factual situation *was an overall design by the law enforcement people.* "[T]he government argues that the defendant produced no corroborating evidence for his testimony; that the issue of entrapment is one for the jury to determine rather than the court; that even though defendant's testimony was largely undisputed, the jury was still entitled to reject his testimony in toto; and that the evidence of the willingness of defendant to sell to the agent permitted the jury to disbelieve defendant's testimony. This line of argument misses the point. The defense of entrapment has undergone much maturation since first announced by the Supreme Court, and both the courts and the legal writers offer varying theories upon which it is based. [Cits.]

"We hold that as a matter of law, if these facts be true, the defendant cannot be convicted of the possession, handling and sale of the heroin. . . The question then comes as to whether the government can rest on the challenge to the credibility of the defendant, or whether it must come forward with some contradictory evidence. . . The issue here is what he did, i.e., taking heroin from one government agent and selling it to another. The government's case cannot rest on the mere fact that he entered into the informer's plan willingly.

"Neither party produced the informer. If the informer's testimony would tend to disprove the defendant's story, it was up to the government to produce him. The defendant having testified to facts which establish a defense as a matter of law, the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of proving guilt beyond all reasonable doubt. [Cit.]" Bueno, supra, pp. 905, 906.

"The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'a different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'"

Sherman v. United States, 356 U. S. 369, 372 (78 SC 819, 2 LE2d 848).

We are reminded of the enduring truth expressed by Mr. Justice Brandeis in Olmstead v. United States, 277 U. S. 438, 485 (48 SC 564, 72 LE 944); "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face."

3. The other remaining aspect of this appeal, although not enumerated as error, is of sufficient importance to require review by this court. It relates to the defendant's right to compulsory process. The defendant had a subpoena regularly issued by the clerk of superior court for agent Dameron. The subpoena was given to the sheriff for service, but was not served, ostensibly *because the sheriff was not paid a fee.* In colloquy with the defendant's counsel, the trial judge stated, "the next time you have subpoenas to serve and the defendant is out on bond, *you pay that officer* (sheriff) and I will see that the officer serves them. *If you don't pay the officer, I am not going to make him serve them.*" (Emphases supplied.) The witness (Dameron) sought to be subpoenaed, resided in the county in which the subpoena was issued. The defendant had a right to compulsory process to obtain the testimony of this witness. Art. I, Sec. I, Par. V, Constitution of Georgia (Code Ann. § 2-105). "No person shall be compelled to pay costs except after conviction on final trial." Art. I, Sec. I, Par. X, Constitution of Georgia (Code Ann. § 2-110). Code Ann. § 24-2823 (as amended), setting out the fees a sheriff is

allowed to charge, provides in part, "All costs arising from services rendered in felony cases shall be paid from county funds, whether the defendant is convicted or acquitted."

*Judgment reversed. Deen, P. J., and Evans, J., concur.*

SUBMITTED JANUARY 13, 1975 — DECIDED APRIL 8, 1975.

*Grogan, Jones & Layfield, Ben B. Philips,* for appellant.

*Eldridge W. Fleming, District Attorney, Robert H. Sullivan, Assistant District Attorney,* for appellee.