## 58556. HUGHES v. THE STATE.

BIRDSONG, Judge.

The trial court, sitting without jury, found Tom Will Hughes guilty of possession of heroin in violation of the Georgia Controlled Substances Act. Hughes appeals, urging that he should have been acquitted as a matter of law because of entrapment on the part of the state and because he was acting as an agent for the state. We agree and reverse, as we find that as a matter of law, Hughes could not be convicted under the evidence.

Tom Will Hughes worked for Len Jones, the manager of El Shangri La Club in Atlanta. Hughes knew that Len Jones was an informer for Detective Sproat, a narcotics agent. Three or four months before Hughes' arrest by Detectives Sproat and Roland, Len Jones introduced Hughes to Detective Sproat at the Fulton County Courthouse. In the course of the conversation, Hughes agreed to be an informer, to work with Len Jones to give information leading to narcotics arrests. Hughes and Sproat communicated frequently in the months before Hughes' arrest. Hughes testified that he gave good information; however, Sproat testified that Hughes' tips never produced anything.

Detective Sproat testified that he knew during this whole time that Len Jones was "playing both sides of the fence," that Jones was dealing heroin and was pretending to be an informer in order to "take the heat" off himself. No competent evidence was given that Hughes dealt in the drug traffic before his involvement with Jones as informer for Detective Sproat.

On the afternoon Hughes was arrested, Detectives Sproat and Roland arrived at the club with a search warrant made against Len Jones and Tom Will Hughes. The detectives arrived just minutes after Hughes had exchanged a packet of heroin, or a "twenty cent piece," for a twenty dollar bill. Sproat sat at the bar, watched the band rehearse, and chatted with Hughes while Roland searched a back room. Sproat told Hughes he was disappointed in him for playing both sides of the fence, arrested him, and invited him to the back room. Hughes was patted down and the twenty dollar bill was found.

Then, as he stripped his clothes to be searched, Hughes reached into his sock, pulled out seven tin foil packets of heroin, and handed them to Sproat, saying, "I'm holding this for Len Jones," or "This is what you're looking for." The bill was government-marked money, which Sproat recognized and identified at trial. Under cross examination, Sproat first stated he did not know to whom Hughes had sold the heroin before he and Roland arrived, but then Sproat admitted that he and Roland had sent an informant into the club ten or fifteen mintues before they arrived at the club and arrested Hughes. Sproat had had a conference with Len Jones an hour or two hours before Hughes was arrested. Although Len Jones' name was on the search warrant along with Hughes', and Hughes told the detectives that it was Len Jones' heroin he was holding, it does not appear that at any time Sproat and Roland made any effort to find Len Jones or inquired as to his whereabouts so as to execute the search warrant against him.

Tom Will Hughes testified that he had never dealt in drugs before agreeing to be an informer with Jones, that he had been concerned with the drug problem because he had a son who was on drugs, that he was introduced to Detective Sproat by his employer at the club, Len Jones, and that he did not know Len Jones was illegally dealing in the sale of drugs. He thought he was to work with "Mr. Len," as he called him, to provide information and help clean up the drug situation. He often talked with Detective Sproat and passed some information to Sproat, but Sproat was not satisfied with that information and wanted Hughes to become more involved. Sproat had said that the only way they would ever catch "these people" was to catch them red-handed with the dope and the money, and Sproat had also insisted Hughes helped "Mr. Len." On the day he was arrested, Hughes was standing on the club porch with Len Jones and Charles Bostic or Boston, who was a man whom Hughes had turned in to Sproat for another type offense and who thereafter had hung about the club, working with Hughes for about two weeks. In Bostic's presence, Len Jones handed Hughes eight tin foil packets of heroin and said, "This is something you can work with, you've got four and four."

Bostic asked for one packet, and Len Jones said, "He (Hughes) will be handling it from now on." Hughes stated that it was less than a minute that he held the heroin before giving some to Bostic and receiving the twenty dollar bill. He intended to call Detective Sproat as soon as he could get to a telephone, but before he had any chance to call, Bostic and Len Jones had run down the porch steps and disappeared. Almost immediately, Detectives Sproat and Roland arrived, and Hughes talked with Sproat a few minutes before removing the remaining packets of heroin from his sock and giving them to Sproat. Hughes testified that he waited until they were in the back room of the club before turning the heroin over to Sproat because the band director and band members were walking back and forth in the club and he had not wanted them to see the exchange. He would not have been involved in the transaction, he said, if he had not believed he was helping Len Jones and Detective Sproat as an informer and if he had not been under pressure from the detectives to become more involved in the drug traffic and produce concrete evidence. That, said Hughes, is what he thought he was doing.

Len Jones did not testify. Detective Sproat denied knowing a Charles Bostic or Boston and refused to identify the informer who had been sent in ten or fifteen minutes before Hughes' arrest. No such person testified. The only statement made in rebuttal of the defense of entrapment was made by Detective Sproat in response to the question, "Did you and Len Jones, in fact, conspire together to plant this stuff, this alleged heroin, on (Hughes)?" Detective Sproat gave a firm denial.

We adhere to the cases of *Hall v. State,* 136 Ga. App. 622, 623 (222 SE2d 140) and *Harpe v. State,* 134 Ga. App. 493, at 495-497 (214 SE2d 738), as we cannot find under the evidence any controversion of defendant's defense of entrapment. Appellant Hughes raised the affirmative defense of entrapment, and the burden was then upon the state to rebut appellant's testimony. *Marshall v. State,* 143 Ga. App. 249, 252 (237 SE2d 709). According to the defense testimony, the entrapment involved Len Jones, who was known to appellant to be an informer and whom appellant had-been instructed to work with and assist,

and a third person who was present when Len Jones gave the heroin to appellant, and who purchased the heroin with what turned out to be government-marked money. The detective's denial that *he and Len Jones conspired* to plant the heroin on Hughes does not serve to refute Hughes' defense that he was entrapped in a transaction involving Len Jones and another individual. Hughes does not contend that Detective Sproat conspired with Len Jones to entrap him; indeed, Hughes does not purport to understand or explain the actual involvement of Sproat or Len Jones, nor is he required to do so. He has established the elements of an entrapment defense (Code § 26-905) which, in fact, could be rebutted only by Len Jones or the third individual. (See *Hall,* supra, p. 623, where it is held that testimony of an officer denying entrapment is of no rebuttal value where the alleged entrapment is that by an informer outside the officer's presence.) "If the informer's testimony would disprove the defendant's testimony, the state should have produced him. In the absence of some evidence by the state directly contradicting the testimony of [appellant] that he was induced by the informer . . . to make the sales on behalf of the state, the defendant . . . [is] entitled to a judgment of acquittal. *Coleman v. State,* 141 Ga. App. 193, 194 (2) (233 SE2d 42)." *Perry v. State,* 143 Ga. App. 227, 228 (237 SE2d 705); *Marshall v. State,* supra; *Harris v. State,* 139 Ga. App. 675, 677 (229 SE2d 148); *Hall,* supra, p. 623.

The court in *Harpe,* supra, at p. 495, found the factual situation in that case "even stronger than that presented in [United States v. Bueno, 447 F2d 903]," in showing an overall design of the law enforcement people repugnant to the concepts of police responsibility and fairness. Without elaboration, but in agreement with the principles expressed in *Harpe,* we can say that we find the factual circumstances in the case sub judice as strong as those presented in *Harpe.*

*Judgment reversed. Quillian, P. J., and Smith, J., concur.*

Argued September 12, 1979 — Decided October 26, 1979.

*T. V. Mullinax,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert, Melvin H. Jones, Assistant District Attorneys,* for appellee.