58314. JONES v. STATE.

BIRDSONG, Judge.

Johnny Junior Jones appeals from a conviction for possession of marijuana. The police officers involved in a questioned search and arrest received a call from a confidential police informant at approximately 6 or 6:30 p.m. The informant, who had given reliable information in the past, told Detective Boyd that Johnny Junior Jones would be traveling from Moultrie that evening in a black Oldsmobile "442" with gold stripes, on his way to pick up five pounds of marijuana at 9 p.m. in Tallahassee, Florida, and would then return to Moultrie. The informant told the officers he had just received this information from a friend who was supposed to buy some of this marijuana, but the informant did not identify that person, nor was the person identified at trial. At 7:30, the officers positioned themselves along the Tallahassee-Moultrie highways, Highways 133 and 319, and at 10:30 p.m., the officer stationed on Highway 133, Deputy Causey, saw the described vehicle heading towards Moultrie and followed it. Deputy Causey ran a tag check, and the information he received was that that tag number was issued to Gail Jones; Deputy Causey knew Gail Jones and knew she

was married to Johnny Junior Jones. At this point, Causey turned on his flashing blue lights; Jones stopped his car at a hospital parking lot, got out of the car, and walked to the police car and was advised by the officer, who was stalling until the other officers could arrive, that they were looking for a stolen car that matched that description, and that Detective Boyd wanted to talk to him. While Deputy Causey was talking to Jones with his back to Jones' car, he heard a door open and turned to see the passenger of Jones' car walking toward the hospital with a brown paper bag under his arm. The officer called to the passenger, Gary Folsom, to stop and get back into the car which Folsom did. Detective Boyd arrived within ten minutes of the stop and advised Jones they had information he was transporting marijuana. The detective told Jones they had no right to search the car without Jones' consent, and that Jones did not have to give his consent, whereupon Jones said, "You can look in the vehicle. I've been set up," or words to that effect. At that time, Jones agreed to sign a consent search form, but when a form was finally obtained from another officer who arrived at the scene, Jones stated he would not sign anything, but said the officers could go ahead and look in the car, and said, "The stuff is in the front seat; go ahead and get it out." The car was searched, and marijuana was found in a brown paper bag on the passenger's side of the car. Appellant and Gary Folsom were placed under arrest.

Appellant enumerates as error on appeal, the failure of the trial court to grant his motion to suppress, the failure to grant a directed verdict for appellant in that the state failed to rebut the defense of entrapment, the admission in evidence of testimony concerning a threat allegedly made by appellant to a third party, and that the evidence is insufficient to sustain the conviction. *Held:*

1. Appellant contends that the search is invalidated because the police did not have a search warrant and did not have probable cause to arrest the appellant and search the automobile incident to such arrest; that the search was performed incident to an unlawful arrest; and that the state failed to establish that the police officers obtained appellant's voluntary consent to the search.

The stop and search of the vehicle without a warrant was based on probable cause. The informant in this case was known to the police to be reliable, having given information leading to drug arrests on at least five occasions. He told Detective Boyd that he got his information from a friend who was supposed to buy some of the transported marijuana; the description the "friend" gave of the planned criminal activity was in sufficient detail, as to the person involved, time, place, and physical description to indicate to the

officers that the information furnished via their informant was more substantial than a casual rumor or accusation based on Jones' general reputation, Draper v. United States, 358 U. S. 307, 313 (79 SE 329, 3 LE2d 327); see Spinelli v. United States, 393 U. S. 410, 416 (89 SC 584, 21 LE2d 637). The information was "of the sort which in common experience may be recognized as having been obtained in a reliable way," Spinelli, supra, at 393 U. S. 417-418. The officers here, "when confronted with such detail, could reasonably infer" that the information was obtained in a reliable way, Spinelli, supra, p. 417; *Shaner v. State,* 153 Ga. App. 694 (1980). It was therefore not essential that the reliability of the informant's information be further established, see *Shaner v. State,* supra. When in pursuing the information, the officer saw a car fitting the exact description given, which turned out to be in fact the car registered in the name of the wife of the person accused and described, which was driven in the precise place and time frame described, the officer had "personally verified every facet of the information given [to the police by the informant] except whether [Jones] had accomplished his mission and had the [marijuana in the car]. And surely, with every other bit of [the] information being thus personally verified, [the police] had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information — that [Jones] would have the [marijuana in the car] — was likewise true." Draper v. United States, 358 U. S. 307, 313, supra. The officers had probable cause and reasonable grounds to believe that Jones was transporting marijuana in his car. Draper, supra, p. 314; the stop and search of the car in these circumstances was valid. See Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543, 555). Even if the circumstances had not risen to the level of probable cause to search without warrant, we hold further that Jones consented to the search. Appellant testified that he consented to the search only after he was lead to believe that the consent search form authorized the search without his consent, and further, that he refused to sign the form. We find no merit in appellant's contentions. The trial court found that the detention of appellant was legal, being based on articulable facts and founded suspicion that appellant possessed contraband, and we agree(*Radowick v. State,* 145 Ga. App. 231, 236 (244 SE2d 346)). The detention did not become an illegal arrest so as to invalidate appellant's consent to search, particularly in view of the additional corroborative evidence that the passenger attempted to escape the scene with a large brown paper bag. *Radowick,* supra, pp. 238-239. The trial court found further that appellant's consent

to search was freely and voluntarily given; the evidence as a whole supports this conclusion. Appellant's own explanation that he consented to a search only after he was lead to believe that the consent form authorized the search without his consent, is consistent with the conclusion that he did consent, and inconsistent with the fact that he refused to sign the form and thereby evinced a freedom from coercion and persuasion, and an understanding of his control over the matter of a written consent search form. The trial judge was authorized by evidence in this case to find that the oral consent of the appellant was not the product of coercion, duress, or deceit, and that it was freely and voluntarily given. *Code v. State,* 234 Ga. 90, 95 (214 SE2d 873); *Radowick,* supra, p. 239. Appellant's implicit contention that he consented because he thought he had been "set up" shows nothing except that, at the most, he perceived a futility and inevitability in his exigent circumstances unaided by any act on the part of the police except that of stopping the appellant, and in this fact alone as a matter of law we cannot find any coercion, overt or subtle. See *Radowick,* supra, p. 240.

2. Appellant's defense of entrapment is that he was induced to enter the drug transaction by Gary Folsom, the passenger, and by a second individual named Gregg Hall, who appellant said had to be the informant because no one else knew of the scheme. Appellant testified that Folsom and Hall made all the arrangements for the purchase without his knowledge, and that he had recent information Hall was working on other drug "busts" in the area. This testimony does not raise the issue of entrapment requiring a rebuttal. Jones stated that the idea or scheme was arranged and proposed to him by Folsom and Gregg Hall, who both came to his house early in the evening of the arrest. He first refused to go, primarily because he was tired from working all day and because his wife did not want him to leave the house, but also because it would have been illegal. Folsom and Hall repeatedly asked appellant to go pick up the marijuana and appellant finally agreed to go because of the good sum of money that he would make. Appellant testified that this whole conversation, from the time Folsom and Hall first proposed the scheme until appellant agreed to go, took no more than twenty minutes. Hall backed out of the trip, and appellant drove to Tallahassee with Folsom in appellant's car. This testimony is not consistent with the "undue persuasion, incitement or deceitful means" necessary to comprise an entrapment defense under Code § 26-905. Although appellant "demurred somewhat" in complying with the scheme, this was by his own admission primarily because he was tired, and in fact it

took only twenty minutes and the promise of money to overcome his reluctance. Appellant's testimony does not show he was induced, by undue persuasion, or deceitful means, in an overall design of law enforcement people, to do what he otherwise had no predisposition to do and would not have done. See *Garrett v. State,* 133 Ga. App. 564, 566 (211 SE2d 584); *Brooks v. State,* 125 Ga. App. 867 (189 SE 2d 448). Appellant's testimony falls short of evincing those circumstances which have been found to raise the entrapment defense. See, e. g., *Hughes v. State,* 152 Ga. App. 80 (262 SE2d 245) (1979); *Harpe v. State,* 134 Ga. App. 493, 495-597 (214 SE2d 738).

In any case, appellant's testimony was rebutted by the passenger Folsom, who denied having arranged the scheme with Gregg Hall, denied any involvement with Gregg Hall, and denied having seen Gregg Hall at all on the day of the arrest. Folsom testified that the idea and the plan were appellant's and that he, Folsom, just went along by invitation; this is consistent with the fact that the trip was made in appellant's car, with appellant driving. Even had appellant's testimony raised an entrapment issue, it was sufficiently rebutted by Folsom's testimony to preclude a directed verdict of acquittal in appellant's favor. See *Hall v. State,* 136 Ga. App. 622 (222 SE2d 140).

3. The enumeration of error concerning the trial court's admission of an alleged threat by appellant is not supported by argument or citation of authority and is deemed abandoned. *Abrams v. State,* 223 Ga. 216 (6) (154 SE2d 443); *O'Kelley v. Hayes,* 132 Ga. App. 134, 135 (207 SE2d 641).

4. Appellant urges that the state failed to present sufficient evidence to carry the burden of proof to convict the appellant. We are satisfied that the evidence was sufficient in this case to sustain the conviction. *Marshall v. State,* 143 Ga. App. 249, 252 (237 SE2d 709). A reasonable trier of fact could rationally have found from this evidence proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Deen, C. J., Quillian, P. J. McMurray, P. J., Shulman, Banke, Carley and Sognier, JJ., concur. Smith, J., dissents.*

ARGUED SEPTEMBER 10, 1979 — DECIDED
MARCH 18, 1980.

*G. Keith Murphy,* for appellant.
*H. Lamar Cole, District Attorney, Dwight H. May, Assistant*

26

*District Attorney,* for appellee.

SMITH, Judge, dissenting.

I disagree with Division 1 of the majority opinion.

This case involves the warrantless stop and search of an automobile based solely upon information from an informant who got his information from a "friend." The appellant, Jones, filed a timely objection to the introduction of the contraband seized as a result of the automobile search. Jones contends that his 4th Amendment rights were violated. In so doing, he raised the question, did the police have probable cause to stop him and then search his car. Jones contends that the police did not and I agree.

Detective Paul Boyd received a telephone call at approximately 6 p.m., December 6, 1978. The call was from an informer. The information that the informer passed along was that Jones, driving a black Oldsmobile 442, with gold stripes, was picking up marijuana in Tallahassee, Florida at approximately 9 p.m. and would bring it back to Moultrie. Boyd, along with Deputy Walt Causey, set a watch on U. S. 319 south. They were in separate cars. At approximately 10:30 p.m. that same night, Causey saw a car, that fit the description given him by Boyd, drive past him heading north toward Moultrie. Causey fell in behind the car. As he followed he checked out the tag number for a possible stolen automobile. The title check showed that the car was in the name of Jones' wife. Causey continued to follow Jones and when he turned left at the traffic light, Causey recognized the driver as Jones. Causey turned left and put on his blue light and stopped Jones. Jones got out of the car and came to the police car. Causey asked Jones for his driver's license, as he complied with this request, Causey heard the car door to the Jones' car close. He turned and saw the man on the passenger side get out and start walking away. The passenger was Gary Folsom. Causey stopped Folsom and told him to get back into the car (Jones' car). Prior to Jones coming up to his car, Causey had radioed Boyd and told him he was stopping Jones. Causey told Jones that Boyd wanted to talk to him as his, Jones' car, fit the description of a stolen vehicle. Causey told Jones this to stall for time until Boyd and others could get there which was approximately 8-10 minutes. Upon arriving Boyd told Jones an informer had told him he had marijuana and he wanted to search his car. Boyd executed a warrantless search of Jones' car some 20 minutes after the stop and found marijuana. At the time of the stop, defendant was not nor had he violated any law in the presence of these officers. Their only reason for stopping him was based upon

information received by Boyd from an informer.

At the hearing on the motion to suppress, Officer Boyd testified that he received the information about Jones from a confidential informant of his. He further testified that the confidential informant received the information passed on to Boyd from a "friend" of his. The State made no attempt to prove reliability or credibility of the "friend." In fact, the statement by Boyd that his informant received the information from a "friend" was the only attempt at establishing the "friend's" reliability or credibility. On cross examination, when Boyd was asked the question, "Did the informant that you talked with tell you anything about this particular friend?" His answer was, "No, sir."

On the trial of the case, the State made no attempt to show that the information Boyd used to stop and arrest Jones was "hearsay on hearsay." That is, that the information was obtained by the informant from an informant. After this was brought out on cross examination, the State made no attempt to show the reliability or credibility of the informant's "friend." The following testimony was given by Boyd at the trial of this case:"Q. You have stated that this other person (the informant) that contacted you had provided you with reliable information in the past? A. Yes, sir. Q. Did he indicate how he had obtained the information that he passed on to you? How he had obtained that information? A. He told me he had got it from a friend of his. Q. Did he name who this other friend was? A. No, sir. Q. Do you know whether or not this other friend is a reliable person, as far as something that he may say? Whether or not you could rely upon what this other person tells you? A. I don't know the man. Q. He did not name the man, and you have no idea who this other friend was? A. No, sir. Q. O.K. did he tell you when your informer — did he tell you when he had received his information from this other friend? A. He said he had just received it. Q. Did he tell you where he was at the time he had received this information? A. No, sir. Q. Did he (the informant) tell you in what manner he had received it? Whether or not he had received it person-to-person with the other friend, or a telephone conversation, or how he received it? A. He just said a friend. This guy told him."

Whether or not the arrest is constitutionally valid depends entirely upon whether or not the officer had probable cause to make it. Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964). When the constitutionality of a warrantless arrest is properly challenged, it is the function of the court to determine if the facts relied upon by the police to establish probable cause for the arrest is sufficient as measured by the 4th Amendment. Beck v. Ohio, supra. Evidence to

show the basis upon which the arresting officer acted in making the arrest, including the nature and details of information received from informants, is both relevant and admissible on the issue of probable cause and must affirmatively be shown if the state is to carry its burden of proving the legality of the arrest. Where, as here, the arrest is initiated on hearsay information received from an informant, the state to establish its legality should sufficiently inform the trial judge of some of the underlying circumstances from which the informant concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informant concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informant was creditable or his information reliable. See Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969). The above is necessary even when the arresting officer, by his own observations, is able to corroborate the substance of the informer's information. That is, the reliability of the informer must be shown on the record; it cannot be established solely by reason of the fact that when the informer's information was acted upon it proved accurate. Frey v. State, 3 Md. App. 38 (237 A2d 774) (1968). In other words, you cannot use the fruits of an illegal arrest to legalize the very arrest that was illegal ab initio.

Where the informer (the friend here) is the source of incriminating information, and there is a middle man (the informant in this case that passed the information along to Boyd) obviously the middle man is but a conduit of the information. In such a case, it is the reliability and/or credibility of the "friend" that is involved. And where the state fails to establish it on the record, or at least to explain its reasons for not doing so, no probable cause to stop and arrest is shown.

In the case of People v. Horowitz, 21 NY2d 55 (233 NE2d 453) (1967), the court in a case almost on all fours with this case said: "This record does not show that any of the law enforcement officers had facts before them sufficient to indicate that this anonymous informer was reliable, or that the police had other information, not derived from the informer, which was sufficient, in itself, to constitute probable cause."

In this case before the court, the state made no effort to prove the reliability or credibility of the third person involved. When Jones developed it through cross examination the state merely, in an inadequate way, tried to establish the reliability and/or

credibility of his (Boyd's) immediate informer, not the "friend." This was insufficient in the light of Spinelli, supra; Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1963) and *Galgano v. State,* 147 Ga. App. 284 (248 SE2d 548) (1978). In this case we have hearsay twice compounded. That is to say, "hearsay on hearsay." Therefore, under this set of facts, where the informant is transmitting information that is not firsthand but from a "friend," the entire evaluation process must begin again at the second level of remoteness. The primary informant (the "friend") must then pass along sufficient data in sufficient detail so that the magistrate may again judge for himself (1) the credibility of the secondary informant and (2) the worth of that secondary informant's information. Spinelli, supra. In a case where hearsay evidence is twice compounded, that is "hearsay on hearsay," the reliability and/or credibility must be shown not only for the conduit-informant but for the ultimate observer-informant, as well. (The friend in this case.) People v. Holup, 289 NYS2d 19 (29 AD2d 923) (1968).

In the case of *Smith v. State,* 136 Ga. App. 17 (220 SE2d 11) (1975), this court dealt with the issuance of a search warrant based upon an affidavit supported by "hearsay on hearsay." In doing this, *Smith* set up the requirement to be met in order for such "hearsay on hearsay" to be admissible in support of such a warrant.

I think it is necessary to state the facts in *Smith,* supra, as it fits this case to a "T." "On November 5, 1974 a police officer went before a justice of the peace to obtain a search warrant. His affidavit stated that he had been contacted by a reliable confidential informant who had given information on two prior occasions which led to three arrests and recovery of drugs. This informant, referred to as Source A, had spoken to another person — Source B, within seven days prior to November 1, 1974. Source A had known Source B for over two years and they had purchased, possessed and sold drugs together "on a partnership basis." Source A stated that Source B regularly bought drugs from the defendant and he had been with Source B when he (B) bought drugs from the defendant. Source B informed Source A, within seven days prior to November 1, 1974, a defendant had spoken to him by telephone and said he had a quantity of cocaine at his premises. Source B did not know that Source A would give this information to a law enforcement officer. The affiant had previously interviewed other sources who stated they had bought or seen drugs at defendant's home. Police records revealed defendant had been arrested for sale of one drug and possession of marijuana. The warrant issued and the ensuing search on November 5, 1974 resulted in confiscation of marijuana,

codeine, phencyclidine, nontax-paid alcohol, and a sawed-off shotgun." The court then said: "The affiant's recitation in the affidavit of the confidential informant's information was hearsay. Hearsay may support the issuance of a valid warrant if the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that the informant was credible or his information reliable. United States v. Ventresca, 380 U. S. 102, 108 (1965); *Grebe v. State,* 125 Ga. App. 873 (189 SE2d 698). There must be a substantial basis for crediting such hearsay. Jones v. United States, 362 U. S. 257 (1960).

"Strict application of the 'two-prong' test of Aguilar, that the magistrate be informed — (1) 'of some of the underlying circumstances from which the informant concludes that contraband, such as narcotics, is where he claims it is,' and (2) 'some of the underlying circumstances from which the officer concludes that the informant, whose identity need not be disclosed, is credible or his information reliable' would appear to require that an affiant vouch for the credibility of Source B, or the reliability of his information. Aguilar v. Texas, 378 U. S. 108 (1964)."

In the *Smith* case, there was information in the warrant setting forth the basis for the informants' reliance upon his informer. We have none here. Also, the informer in *Smith* was vouched for adequately. Not so here.

It is a well settled principle of law that "when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant . . .' " Aguilar v. Texas, supra. See also United States v. Ventresca, 380 U. S. 102, 106 and *Morgan v. Kiff,* 230 Ga. 277 (196 SE2d 445) (1973). The court arrived at the above conclusion thusly. "An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.' United States v. Lefkowitz, 285 U. S. 452, 464. The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' Johnson v. United States, 333 U. S. 10, 14. Under such a rule 'resort to (warrants) would ultimately be

discouraged' Jones v. United States, 362 U. S. 257, 270." Aguilar, supra, p. 110.

United States v. Roth, 391 F2d 507, 511, the court in discussing the issue of "inherently defective hearsay on hearsay" stated that such is defective where "there is absent any indication of the reliability of of the anonymous hearsay source."

In addition to the above there are two other cases that sound the death knell to the states' contentions. *Galgano v. State,* supra, sets out how an informant's credibility must be established. The state did not meet the *Galgano* requirements here.

In the case of *State v. Wells,* 153 Ga. App 308 (265 SE2d 111) (1980), the informant described the color of the car and name of the car to the officers. Also, he (informant) told where the car was located and that the defendant was trying to sell marijuana. The informant did not see any marijuana. Based upon this information the trial court granted the motion to suppress and this court affirmed. The court went on to say that even if the informant was reliable the information was insufficient to establish probable cause.

The burden of proving that the search and seizure were lawful is on the state. Code Ann. § 27-313 (b). The state having failed to show the underlying reasons for the reliability of its "confidential" informant (informant's friend), this burden has not been met. *State v. Mabrey,* 140 Ga. App. 577 (231 SE2d 461) (1976).

There was not sufficient probable cause to authorize a warrantless stop and search in this case, as *Mabrey,* supra, would apply to the informant's "friend" as well as to him.

In arriving at this we must remember that this was no routine traffic check but a stop based entirely upon "hearsay upon hearsay" information. It must also be remembered that the sole reason for trailing and stopping Jones was the "hearsay on hearsay" information. There being no reliability and/or credibility established for the "friend," no probable cause existed for the stop and search.

I would reverse and respectfully dissent.