60163. McDONALD v. THE STATE.
60164. DAVIS v. THE STATE.

CARLEY, Judge.

Appellants in these companion cases were jointly indicted, tried and convicted of possession of cocaine with intent to distribute. Motions for new trial were filed, amended and, after a hearing, denied. Both appellants appeal their convictions and their appeals are consolidated for review.

The evidence adduced at trial showed that a paid, unnamed, confidential informant made casual contact with appellant Davis approximately six weeks prior to appellants' arrest at which time the informant indicated his interest in purchasing an ounce of cocaine. Davis told the informant that he did not have any cocaine, but that he would check and see if some could be located. Approximately one month after this first conversation, Davis and the informant had a chance encounter. Again the informant's desire to purchase cocaine was discussed and again Davis stated that he did not have any but would make inquiries. Approximately two weeks later the informant telephoned Davis and asked if he had been able to locate any cocaine. Davis replied that he had not checked but would do so. A half hour to an hour later, the informant called Davis again and Davis stated that he had found someone who could get an ounce of cocaine. Shortly thereafter, the informant and an undercover GBI agent went to Davis' apartment and told Davis they would like to purchase a gram of cocaine and, if the substance proved satisfactory, they would like to purchase an ounce. Davis replied that he did not have the cocaine but that he could contact a man who did have some. Davis then made a phone call and shortly thereafter appellant McDonald arrived and went into a back room of the apartment with Davis. Davis returned to the front room and told the GBI agent and informant the cost of a gram of cocaine. The money was exchanged and Davis went into the back room and returned with the cocaine. McDonald then came out of the back room and left the apartment.

That evening the GBI agent and the informant returned to Davis' apartment and inquired about the possibility of purchasing two ounces of cocaine. Davis stated that two ounces could be obtained from the same man who had sold them the gram earlier in the day. Davis made a phone call and then arranged to meet the agent and informant in the parking lot of an International House of Pancakes. After leaving the apartment alone, Davis traveled to a Waffle House where he met with McDonald. Davis got into the car with McDonald and they drove to the House of Pancakes in McDonald's car. Once at the prearranged meeting place, Davis got out of McDonald's car and

walked across the parking lot towards the agent and the informant. Davis asked to see the money and the agent asked to see the cocaine. Davis pointed to the vehicle in which McDonald was seated and said the cocaine was over there in the car with "his" man. The agent then signaled to other agents surrounding the parking lot. Davis was taken into custody and police officers approached McDonald's car, identified themselves and asked him to step out. After conducting a body search of McDonald, the officers searched the car and found cocaine in a plastic bag lying uncovered on the floorboard on the driver's side of the car. McDonald was then arrested.

## McDonald v. State, Case No. 60163.

1. Defendant McDonald first argues that the trial court erred in denying his motion to suppress evidence which he contends was not legally seized pursuant to the "search incident to arrest" exception to the warrant requirement. We find reliance on this argument misplaced under the facts of the case. Generally, searches conducted without the prior approval of a judge or magistrate must be justified under one of the "specifically established and well-delineated exceptions" to the warrant requirement. See Coolidge v. New Hampshire, 403 U. S. 443, 454-455 (91 SC 2022, 29 LE2d 564) (1971). Among those exceptions is what is commonly denominated as the "automobile exception" and which had its genesis in Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925). The phrase "automobile exception" connotes a legitimate warrantless search of this otherwise constitutionally protected area whenever (1) probable cause to believe that the automobile contains contraband or evidence of a crime conjoins with (2) exigent circumstances making the warrant procedure impractical and causing the resort to an immediate warrantless search to be reasonable and necessary. Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419) (1970); Arkansas v. Sanders, 442 U. S. 753, 760 (99 SC 2586, 61 LE2d 235) (1979); *Miller v. State,* 127 Ga. App. 248 (192 SE2d 915) (1972); *Radowick v. State,* 145 Ga. App. 231 (2) (244 SE2d 346) (1978). When the search and seizure is made under the Carroll exception, "[t]he right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Carroll v. United States, 267 U. S. 132, 158, supra; *Cunningham v. State,* 133 Ga. App. 305, 308 (211 SE2d 150) (1974); *Peters v. State,* 148 Ga. App. 850, 851 (253 SE2d 214) (1979). Therefore, since the search in the instant case was predicated upon the "automobile exception" to the warrant requirement and not upon the "search incidental to a lawful arrest exception," McDonald's

contention that his arrest was unlawful is totally irrelevant.

It has often been held that probable cause to search an automobile exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the vehicle contains contraband. *Cunningham v. State,* supra; *State v. Bradley,* 138 Ga. App. 800 (2) (227 SE2d 776) (1976); *Fuqua v. State,* 142 Ga. App. 632 (1) (236 SE2d 685) (1977). In determining whether there was reasonable cause to believe that the vehicle contained contraband we look to the totality of the circumstances including, but not limited to, information obtained by law enforcement agents conducting a common investigation. *Cuevas v. State,* 151 Ga. App. 605, 608 (260 SE2d 737) (1979); *Cunningham v. State,* supra.

The evidence adduced at the hearing on the motion to suppress shows the following circumstances relative to the search and seizure of McDonald's car and his subsequent arrest: The GBI agent testified to the facts and circumstances surrounding his purchase of the gram of cocaine from appellant Davis earlier in the day and of the arrangements which were made for the sale of the two ounces of cocaine that same night in the parking lot of the pancake house. In addition, he testified that upon arrival at the pancake house he saw Davis sitting in the car with another man and that he recognized the other man as the same one whom he had seen earlier that day in Davis' apartment—appellant McDonald. In addition, the officer who actually conducted the search of the car and made the arrest of McDonald testified that he was a member of the police force conducting this particular investigation and that his primary function had been surveillance of the appellants. This officer further testified that the GBI agent was wearing a body bug and that all of the GBI agent's conversations pertaining to the buying and selling of the cocaine had been monitored. The officer was conducting surveillance of the pancake house where he observed the arrival of both the appellants' vehicle and the GBI agent's vehicle. He saw Davis and the agent meet and heard, through the monitoring device, Davis tell the agent that the cocaine was over in the car with "his" man. Upon receiving the agent's prearranged signal, the officer went to the car in which McDonald was seated in the driver's seat, identified himself as a police officer, ordered McDonald out of the car and did a pat-down search. He then proceeded to search the car and found a bag of cocaine uncovered on the floorboard of the driver's side of the car. He then arrested McDonald.

In view of the totality of the circumstances in this case, together with the reasonable inferences to be drawn therefrom, we conclude that there was probable cause to believe cocaine was in the car.

Probable cause having been established, we look to the question of exigency. Given the fact that McDonald was seated in the driver's seat of the car to be searched, exigency measured from the moment of the search forward is easily found. See *Smith v. State,* 135 Ga. App. 424 (218 SE2d 133) (1975); *Miller v. State,* supra. In addition, measuring the exigency from the point of search backward in time demonstrates that there had not been a reasonable opportunity to obtain a warrant. There was testimony that a warrant was not procured because it was initially thought the "buy-bust" would take place in Davis' apartment in DeKalb County, not at the parking lot of a pancake house in Fulton County, and the officers did not know exactly who would arrive or what kind of vehicle they would be driving. The car in which Davis left his apartment was not the same car in which Davis and McDonald arrived at the pancake house. We believe this factual situation constitutes sufficient exigency coupled with probable cause to justify a warrantless search. Compare *Hardwick v. State,* 149 Ga. App. 291 (254 SE2d 384) (1979).

"On motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. [Cit.]" *State v. Swift,* 232 Ga. 535, 536 (1) (207 SE2d 459) (1974); *Williams v. State,* 148 Ga. App. 55 (2) (250 SE2d 848) (1978). In the case at bar there is evidence to support the trial judge's order denying the motion to suppress and the court's finding is not clearly erroneous. Accordingly, the foregoing enumeration of error is without merit. *State v. Hillman,* 146 Ga. App. 418 (246 SE2d 434) (1978).

2. In his second enumeration of error, McDonald contends the trial court erred in denying Davis' motion to sever. A review of the record reveals that Davis did make a motion to sever which was overruled by the trial court. However, McDonald himself made no such motion to sever, did not join in Davis' motion and did not object to the trial court's denial of Davis' motion.

"The appellant in this case did not elect to sever. There is no authority, under the statute, to require the court to sever the trial of a defendant who has made no motion to sever. 'The right to a severance under both the Georgia law and the American Bar Association Standards Relating to the Administration of Criminal Justice arises only upon an appropriate motion. No motion to sever having been made in the trial court, the contention is without merit.' [Cit.] It is too late after an adverse verdict to raise the issue for the first time. [Cit.] The appellant will not be heard to complain of the trial court's denial of a co-defendant's motion to sever." *Way v. State,* 239 Ga. 316 (2) (236 SE2d 655) (1977). McDonald had no right to rely upon his

co-defendant's motion and, thus, is estopped from raising the issue for the first time on appeal.

*Davis v. State, Case No. 60164.*

3. In asserting on appeal the general grounds, Davis contends that the verdict finding him guilty is contrary to the evidence, without evidence to support it, against the weight of the evidence and contrary to law and the principles of justice and equity. "After a jury has returned a verdict of guilty and the defendant seeks a reversal of his conviction by arguing that the trial court erred in failing to grant a motion for new trial on the general grounds, the only question presenting itself to the appellate court is whether there is sufficient evidence to support the verdict. [Cit.] It is the function of the jury, not the appellate court, to determine the credibility of witnesses and weigh any conflicts in the evidence. The appellate court views the evidence in a light most favorable to the jury's verdict after it has been rendered. [Cits.]" *Laws v. State,* 153 Ga. App. 166 (1) (264 SE2d 700) (1980). The evidence here is clearly sufficient to support the verdict and our review of the record compels our conclusion that any rational trior of fact reasonably could have found from the evidence adduced at trial proof of the guilt of Davis beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Heard v. State,* 153 Ga. App. 474 (265 SE2d 828) (1980).

4. In his second enumeration of error, Davis urges that the trial court erred in denying his motion for directed verdict on the issue of entrapment as a matter of law.

The trial court's refusal to direct a verdict of acquittal is error only when there is no conflict in the evidence and the evidence, with all reasonable deductions, demands a verdict of not guilty. Code Ann. § 27-1802 (a); *Long v. State,* 150 Ga. App. 796 (258 SE2d 603) (1979). The defense of entrapment is applicable when the accused has been induced "by undue persuasion, incitement, or deceitful means" to commit the act, which he otherwise would not have committed. Code Ann. § 26-905; *Brown v. State,* 132 Ga. App. 399 (1) (208 SE2d 183) (1974); *Orkin v. State,* 236 Ga. 176 (8) (223 SE2d 61) (1976). The phrase "undue persuasion" as used in Code Ann. § 26-905 means something more than repeated requests on the part of an officer or agent for contraband goods. See *Garrett v. State,* 133 Ga. App. 564, 566 (3) (211 SE2d 584) (1974); *Johnson v. State,* 147 Ga. App. 92, 93 (248 SE2d 168) (1978).

Davis testified that the informant asked him on three occasions to help him get some cocaine. He further testified that he told the informant he would check and, in fact, did call several people attempting to find cocaine for the informant. On the day of the sale in

question, Davis testified that he wanted to "get out of the deal" but that the GBI agent persisted that he continue to attempt to make the necessary arrangements for the purchase of the two ounces of cocaine. This evidence and testimony reveals no initial reluctance on the part of Davis when attempting to locate the cocaine for the informant. Rather, the evidence reveals that Davis attempted to "get out of the deal" only after he began dealing with the GBI agent and after he had already participated in the sale of the gram of cocaine earlier on the day in question. We do not believe that this testimony is consistent with the "undue persuasion, incitement, or deceitful means" necessary to comprise an entrapment defense under Code Ann. § 26-905. See *Garrett v. State,* supra; *Hughes v. State,* 152 Ga. App. 80 (262 SE2d 245) (1979); *Harpe v. State,* 134 Ga. App. 493, 495-497 (214 SE2d 738) (1975).

Even assuming that Davis' testimony did establish the elements of an entrapment defense, his testimony was contradicted by the GBI agent who was present at all pertinent times on the day of the actual sale of the cocaine and during the alleged undue persuasion. The GBI agent testified that at no point did Davis attempt to back out of the deal and that he neither exerted any pressure over Davis nor insisted that Davis arrange for the sale of the cocaine. This testimony was sufficient to rebut Davis' defense of entrapment and to create an issue of fact to be submitted to the jury. *Henderson v. State,* 141 Ga. App. 424 (233 SE2d 500) (1977); *Sprague v. State,* 147 Ga. App. 347 (1) (248 SE2d 711) (1978). Compare *Robinson v. State,* 145 Ga. App. 17 (243 SE2d 257) (1978) where the alleged undue influence occurred out of the presence of the state's witness and where the informant did not testify. Accordingly, the trial court did not err in denying Davis' motion for directed verdict of acquittal. *Chambers v. State,* 154 Ga. App. 620 (1) (1980).

5. Davis submits that the trial court erred in refusing to grant his motion to sever his trial from that of his co-defendant McDonald. Davis argues that his trial was prejudiced because his defense was antagonistic to that of McDonald and because of the "spill-over" effect of the substantial evidence against McDonald.

Without a clear showing of harm and prejudice by movant, the mere fact that a co-defendant's defenses are antagonistic is not sufficient in itself to warrant separate trials. *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975); *Reaves v. State,* 146 Ga. App. 409, 411 (246 SE2d 427) (1978); *Whitlock v. State,* 148 Ga. App. 203 (251 SE2d 59) (1978). Furthermore, "[t]he burden was on the appellant [Davis] to do more than raise the possibility that a separate trial would give him a better chance of acquittal. [Cit.]" *Kates v. State,* 152 Ga. App. 29, 34 (262 SE2d 221) (1979).

Davis asserted the defense of entrapment and, thus, he was required (and he did so at trial) to admit the commission of the offense charged in the indictment. *Carter v. State,* 140 Ga. App. 208 (230 SE2d 357) (1976); *Reed v. State,* 130 Ga. App. 659, 661 (204 SE2d 335) (1974). Accordingly, we are unable to find that Davis was prejudiced by the substantial evidence adduced against his co-defendant. Compare *Crawford v. State,* 148 Ga. App. 523 (251 SE2d 602) (1978). The record is void of any clear showing of prejudice amounting to a denial of due process. *Cain v. State,* supra; *Aaron v. State,* 145 Ga. App. 349 (243 SE2d 714) (1978). As there was no abuse of discretion by the trial court in denying Davis' motion to sever, we are without authority to reverse. *Baker v. State,* 238 Ga. 389 (2) (233 SE2d 347) (1977). Thus, this enumeration of error is without merit.

6. Finally, Davis contends that the trial court erred in failing to instruct the jury on the burden of proof on the issue of entrapment. In the instant case, the trial court's instruction concerning entrapment was substantially in the language of the applicable statutory provision appearing in Code Ann. § 26-905. Davis relies upon *Reed v. State,* supra, for the proposition that a separate instruction on the burden of proof on entrapment was required specifically instructing the jury that the burden of disproving entrapment beyond a reasonable doubt was upon the state.

However, this court followed *Reed* in reversing *McNeill v. State,* 134 Ga. App. 45 (213 SE2d 119) (1975), and was in turn reversed in *State v. McNeill,* 234 Ga. 696, 697 (217 SE2d 281) (1975), the Supreme Court holding: "There was a lengthy charge on entrapment followed by still another charge on the burden being on the state to prove guilt beyond a reasonable doubt. The jury was fully apprised of the state's burden of proof in this case and it was not error to fail to specifically charge the jury that the state had the burden of proving that the defendant was not entrapped." See also *Cook v. State,* 137 Ga. App. 406 (224 SE2d 70) (1976). We, therefore, do not find *Reed* to be persuasive authority for Davis' argument.

"The charge to the jury must be viewed as a whole and not taken as single instructions in artificial isolation. [Cits.]" *Moses v. State,* 245 Ga. 180, 182 (263 SE2d 916) (1980); *Veasley v. State,* 142 Ga. App. 863 (237 SE2d 464) (1977). In the instant case the trial judge presented to the jury a general, yet thorough, charge on the presumption of innocence and on the basic principles of reasonable doubt and the burden of proof upon the state in a criminal prosecution. The trial judge also instructed the jury that this burden of proof never shifted to the defendant. This portion of the charge was followed by general instructions on the law of intent and with a

complete and satisfactory charge on the issue of entrapment.

"We hold that where the charge of the court includes instruction as to [entrapment] but places the burden of proof as to each essential element of the crime, including intent, upon the state beyond a reasonable doubt, it is not error for the court not to instruct the jury specifically, absent a request, as to any burden of proof regarding [entrapment]. [Cit.]" *Powell v. State,* 237 Ga. 490, 492 (228 SE2d 875) (1976); accord, *Harris v. State,* 237 Ga. 718, 723 (230 SE2d 1) (1976). The record being void of any request by Davis to specifically charge the jury as to the burden of proof on entrapment, this enumeration is without merit.

*Judgments affirmed. Quillian, P. J., and Shulman, J., concur.*

No. 60163 SUBMITTED; No. 60164 ARGUED JULY 9, 1980 — DECIDED OCTOBER 1, 1980 —
REHEARING DENIED OCTOBER 20, 1980 — 

*Daniel S. Zevin,* for appellant (case no. 60163).
*Vernon S. Pitts, Jr.,* for appellant (case no. 60164).
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, A. Thomas Jones, Assistant District Attorneys,* for appellee.