## 61067. BUFORD v. THE STATE.

BIRDSONG, Judge.

On June 13, 1977, a DC-3 airplane crashed on Ichauway Plantation in Baker County, Ga. Investigation showed the plane had carried a quantity of marijuana of which all save a small residue had

been removed by a ground crew, none of whom were ever apprehended. Appellant Buford admitted he was the co-pilot of the plane, and that prior to June 13, the plane had departed Florida, then gone to the Bahamas, to South America, back to the Bahamas and to Baker County, where it crashed.

Appellant was indicted in six counts. His first trial in July 1979 ended in mistrial. In the second trial, from which this appeal arises, two of the charges were dropped. Buford was convicted of possession of 2-1/2 ounces of marijuana and mistrials were declared as to possession with intent to distribute marijuana, distribution of marijuana, and delivery of marijuana.

Buford's defense at trial (and at the first trial) was that at the time of the crash, and since April 1976, he was an operative and informant for the United States Drug Enforcement Administration (DEA). He testified that since April 1976, he had provided information to the DEA and that his work with that department necessitated his active involvement, with the DEA's knowledge and permission, in drug-related activities. He testified that he frequently spoke with certain DEA agents by telephone, and had informed the DEA that in June 1977 an airplane loaded with marijuana would land in Baker County. Witnesses for the DEA admitted that Buford was an operative beginning in April 1976, but stated that his services had been terminated in September of 1976, and that the DEA had had no contact with him since that time. However, Buford testified that he had received no notice of any such termination. No agent testified that Buford had been notified of this termination, and the agent with whom Buford worked directly did not notify him of his termination. Buford lived with his mother, who testified that after September, 1976, she heard Buford make calls to the DEA agents, and she frequently answered telephone calls from one of the named DEA agents and recognized his voice, but that finally she had told her son to place his DEA calls from other phones because she had received no reimbursement for those calls. Buford did, however, produce a telephone bill which shows that a two-minute call was made to the DEA number in Atlanta from his mother's residence in February 1977.

Appellant contends, and it is not refuted, that after the first mistrial of his case in July 1979, he had reason to believe he would not be tried again, and that it was not until late June 1980, that he was notified he would be tried again in July 1980. His retained new counsel, who immediately issued a subpoena duces tecum to one Special Agent Vinsik, agent in charge of the Atlanta regional DEA office, requiring Agent Vinsik to appear and bring the DEA telephone toll receipts for the period in question; all information pertaining to

Buford's contact with the DEA; all information pertaining to a certain arrest in Alabama (towards which Buford contends he provided information); and all manuals or documents pertaining to policies and procedures of the DEA with regard to termination of confidential informants.

On the day of trial, July 22, the state filed a motion to quash this subpoena, which the trial court granted. Buford moved for a continuance on grounds that he had on July 3 filed a request under the Federal Freedom of Information Act, directed to the Atlanta office of the DEA, and requesting substantially the same information sought in the subpoena duces tecum and that no action had been taken on this request as of the date of trial. Buford's motion was denied.

Buford appeals his conviction, urging as error the trial court's quashing of the subpoena duces tecum, the denial of his motion for continuance, and, further, the admission of testimony by a witness who shared a cell with Buford. *Held:*

1. The state successfully moved to quash the subpoena duces tecum on grounds that "compliance with the subpoena would be in contradiction to federal regulations, specifically 28 CFR § 16.21 et seq. and would be without authority of the Attorney General of the United States," and that the subpoena sought the disclosure of privileged information. The state contended that since 28 CFR § 16.21 et seq. mandates that no employee of the U. S. Department of Justice shall, in response to a demand of a court or other authority, produce any material contained in the department files without prior approval of the U. S. Attorney General, the regulations prevent the disclosure of any departmental information unless the Attorney General authorizes the disclosure. As authority for this proposition, the state cites United States ex rel. Touhy v. Ragen, 340 U. S. 462 (71 SC 416, 95 LE 417).

The state showed that no proper authorization to produce the requested items had been given by the Attorney General; that the requested telephone records reposed in a warehouse in Miami and Agent Vinsik had neither control of nor access to them, nor time to get them before trial; that DEA files contained no information about an arrest in Alabama in which Buford played any part; and that the other information sought was privileged and confidential.

Appellant argues that he has the right to compulsory process (see *Harpe v. State,* 134 Ga. App. 493, 497 (214 SE2d 738)), and an executive attempt to resist a subpoena must give way to those rights for compulsory process. United States v. Nixon, 418 U. S. 683 (94 SC 3090, 41 LE2d 1039); United States v. Fromme, 405 FSupp. 578.

We are confronted with an issue that appears to have no

precedent in Georgia law, specifically whether federal regulations forbidding executive employees to disclose information and produce items from departmental files without proper authorization, will prevent such disclosure even upon appropriate demand by a court, particularly a state court. The Touhy v. Ragen case, supra, has spawned a quarter century of confusion, ever since that case held in 1950 that a Department of Justice employee cannot be compelled to produce or held in contempt for refusal to produce requested material. Our study has shown that government agencies have for decades employed these regulations to avoid disclosure to courts and for thirty years have used Touhy v. Ragen as authority for doing so. See especially EEOC v. Los Alamos Const. Co., 382 FSupp. 1373, 1376-1381. However, we do not perceive that such federal regulations prevent courts of this state from requiring that such evidence be produced where the evidence is material to the defense and therefore necessary to due process.

Touhy v. Ragen, supra, 467, merely held that the department employee who declined to produce material on the basis of what is now 28 CFR § 16.21 et seq., *could not be held in contempt.* The court specifically said: "We find it unnecessary, however, to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for [this case] raises no question as to the power of the Attorney General himself to make such a refusal." Mr. Justice Frankfurter, in his dissent, especially noted that "There is not a hint in [Boske v. Comingore, 177 U. S. 459 (20 SC 701, 44 LE 846), the predecessor of the Touhy decision] that the Government can shut off an appropriate judicial demand for such papers." Mr. Justice Frankfurter cautioned that although the Attorney General may forbid his subordinates to produce documents, he can be reached by legal process and can then raise whatever issues of privilege from testimonial compulsion he may choose.

28 CFR § 16.21 et seq., like similar regulations of other federal departments, is authorized by the "Federal Housekeeping Statute" at 5 USCA § 301. A 1958 congressional amendment to this statute specifically cleared up any executive misinterpretation as to whether such regulations created an executive immunity from court dis-covery. See esp. Committee for Nuclear Responsibility v. Seaborg, 463 F2d 788; EEOC v. Los Alamos Const. Co., supra; Cooney v. Sun Shipbuilding &c. Co., 288 FSupp. 708, 713; Denny v. Carey, 78 FRD 370, 372. The statutory provision, "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public" applies even more emphatically to in-formation sought by criminal defendants who are constitutionally

guaranteed the right to compulsory process.

There is, since 1974, no longer any doubt that the trial court in a criminal case has the power, indeed the "manifest duty," to marshall the evidence and vindicate the constitutional guarantees of a criminal defendant's rights "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor," against an executive suppression even by the President of the United States. United States v. Nixon, 418 U. S. 683, supra. And we have no doubt that this applies as well to state trial courts as to federal courts, as the Alabama Supreme Court astutely held in 1948 in Parsons v. State of Ala., 38 S2d 209, 216. In 1961, the seventh circuit said in a civil case: "[T]he Board's rule suppressing its documents cannot limit power of this court to make an unfettered determination of the facts." Olson Rug Co. v. NLRB, 291 F2d 655, 661. As to the executive claim of privilege, 5 USCA § 301 does not confer or create a privilege (NLRB v. Capitol Fish Co., 294 F2d 868); and moreover, there is no longer any doubt that issues of privilege—even as to matters of departmental policies and procedures (see Olson Rug Co. v. NLRB, supra)—are not for the executive to determine, but are for the court to decide upon a balancing of the fundamental demands of due process against the executive interest in withholding the information. *Thornton v. State,* 238 Ga. 160, 163-164 (231 SE2d 729); United States v. Nixon, supra, p. 1066; Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639); United States v. Reynolds, 345 U. S. 1 (73 SC 528, 97 LE 727); Committee for Nuclear Responsibility v. Seaborg, supra; NLRB v. Braswell Motor Freight Lines, 363 F2d 600; NLRB v. Capitol Fish Co., supra; Denny v. Carey, supra. In general, "the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." United States v. Nixon, supra, p. 1066.

The evidence sought by Buford through the subpoena duces tecum was unquestionably "demonstrably relevant" (United States v. Nixon, supra) and material to the defense (Parsons v. State of Ala., supra). In our holding that the trial court erred in quashing the subpoena, the fact that Agent Vinsik could not be compelled to produce the items, or be held in contempt for merely declining to respond to the subpoena, causes us no dismay; nor does the contention that since he did not have them in his custody and control he was the wrong person to subpoena and that consequently the appellant is out of luck. To use Mr. Justice Frankfurter's famous last words in his Touhy dissent, to hold that the trial court has jurisdiction to convict a defendant but has no power to marshall the

evidence in his defense, or to hold that the Attorney General may forbid his subpoenaed employees to produce material and then ultimately evade production altogether because the wrong person was served "would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle." The Fifth Circuit said in NLRB v. Capitol Fish Co., supra, 874, that United States v. Reynolds, 345 U. S. 1, supra, seems to overrule any suggestion in Touhy v. Ragen that the lack of service of process over the departmental head prevents a court from deciding whether the evidence withheld by a subordinate is privileged. In the Reynolds case, the Secretary of State was apparently not served by process, but he was "notified" by the trial judge that production was ordered (see NLRB v. Capitol Fish Co., supra, fn. 12). We agree completely with the prescient ruling by the Alabama court in Parsons v. State of Ala. in 1948, supra, 216, that, upon the trial court's determination that the evidence is material and that the subpoenaed employee could not produce it himself, "the appropriate and dignified approach [would be] to move the Attorney General of the United States to make provision for the production of the information." But on the basis of later cases, particularly United States v. Nixon, supra, we go further and say that if the Attorney General refuses, the trial court must make a determination on the Attorney General's claim of privilege, and if the material is necessary to due process, the court should order its disclosure. To say otherwise would be to permit the government head to determine the extent of his privilege (see, Denny v. Carey, supra), and would abdicate "[j]udicial control over the evidence in a case . . . to the caprice of executive officers." See, United States v. Reynolds, supra, 9. The Attorney General might appeal any adverse judicial order to the proper forum, but without a trial court demand for the evidence, we are back where we began; and without the evidence, if it is material, the defendant ought not be tried. It was error to quash the subpoena in this case without making provision for the production of the evidence sought, and error to try the defendant without it. We reverse the conviction on these grounds.

2. It was an abuse of trial court discretion to deny Buford's motion for continuance based on his requests under the Freedom of Information Act, particularly since the trial court quashed the subpoena aimed at the same evidence. Manifestly, the evidence sought was material to the defense and necessary to a fair trial.

3. A former cellmate of the appellant testified that over a period of time the appellant told him of the plane crash in Baker County, and also about many other drug transactions and deliveries and about the money he made, but also indicated that Buford maintained he acted as an operative for the DEA in these activities, and stated

that he believed the appellant's story. Appellant contends the admission of this testimony was prejudicial error, as being evidence of other crimes and placing his character in issue. But the cellmate's testimony did not contradict Buford's contention that he engaged in these activities as a DEA agent, so it did not constitute evidence of other crimes, nor place Buford's character in issue. And, in any case, since appellant himself testified to substantially the same thing, explaining in terse detail that as a DEA operative he was free to engage and in fact was obliged to engage in drug transactions so long as he gave prior notice to the DEA, we see no prejudice in the admission of the testimony. See *Smith v. State,* 210 Ga. 713, 714 (82 SE2d 507).

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

DECIDED MAY 7, 1981 —
REHEARING DENIED JUNE 10, 1981.

*Del Percilla, Jr., Thomas W. Malone,* for appellant.
*Gilbert J. Murrah, District Attorney, J. Brown Moseley, Assistant District Attorney,* for appellee.