52543. THE STATE v. GUHL.
52544. MITCHELL v. THE STATE et vice versa.

WEBB, Judge.

In May, 1975 an investigative grand jury was empaneled in DeKalb County pursuant to Ga. L. 1975, pp. 48, 51 (Code Ann. § 59-602B). Superior Court Judge Clyde W. Henley, an assistant district attorney and several investigators were assigned to supervise and assist the grand jury in accordance with the statute. The investigative grand jury was charged to investigate several matters relating to county affairs, including allegations made against the appellee Tymon F. Mitchell that he had taken money and other things of value in return for favors for certain people doing business with the county. Its investigation did not involve matters of illegal electronic surveillance until December, 1975, when it indicted Mitchell and A. C. Guhl for invasion of privacy based upon numerous tape recordings and

equipment seized pursuant to a search warrant issued on October 17, 1975. Mitchell was Guhl's executive assistant and all but two items seized were in Mitchell's office. The search warrant was supported by the affidavits of six persons and the sworn statement of the district attorney, and was issued by Judge Henley. Mitchell and Guhl filed motions to suppress evidence attacking the search warrant. After a lengthy hearing the court overruled that portion of the motion which alleged that the affidavits showed on their face that there was no violation of Code Ann. § 26-3001 and thus no probable cause for the issuance of a search warrant, and sustained the part of the motion asserting that the issuing magistrate did not act in a neutral and detached manner, disengaged from activities of law enforcement. The state appeals from the ruling suppressing the evidence and Mitchell cross appeals from the holding that there was probable cause for the issuance of a search warrant.

1. In considering the Fourth Amendment protections against unreasonable searches and seizures, the most basic constitutional rule is that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " Coolidge v. New Hampshire, 403 U. S. 443, 454 (91 SC 2022, 29 LE2d 564) (1971) (quoting Katz v. United States, 389 U. S. 347, 357). However, "The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' [Cits.]" Shadwick v. City of Tampa, 407 U. S. 345, 350 (92 SC

2119, 32 LE2d 783) (1972). The issue here is whether the evidence presented at the hearing was sufficient to justify the conclusion that the issuing magistrate had such an affiliation with law enforcement as to disqualify him per se from issuing the search warrant in question.

Judge Henley, who issued the warrant in question, personally empaneled and charged the special investigative grand jury which indicted the appellees. He met both formally and informally with members of the grand jury and discussed testimony and other matters with them, including the fact that he was conferring with the district attorney. He received, discussed and passed on to the district attorney information pertinent to the grand jury's assigned duties, one of which was to investigate allegations concerning Mitchell. He helped the district attorney set up the grand jury's budget. He gave the assistant district attorney and staff investigators suggestions and directives concerning handling witnesses, whom to call as witnesses, persons to be interviewed by staff investigators, areas of investigative inquiry, sources of information, investigative technique, the advisability of issuing indictments, and the particular investigation of Mitchell. He discussed and conferred with the district attorney and staff investigators in regard to grand jury testimony and functions on a frequent, if not daily, basis. He negotiated and ultimately granted immunity to persons who testified before the grand jury as to alleged misdeeds of Mitchell. He expressed unfavorable opinions of the honesty and credibility of both appellees to the assistant district attorney, staff investigators and others, and specifically stated that he "considered [Mitchell] to be a crook." There was also evidence that Judge Henley advised Mitchell and Guhl that it was legal for them to secretly record conversations in which they were participants.

The evidence abundantly authorized the conclusion that Judge Henley had become so affiliated with the district attorney's investigatory and prosecutorial functions with the special investigative grand jury as to warrant his disqualification. See *Baggett v. State,* 132 Ga. App. 266 (208 SE2d 23) (1974); *Hawkins v. State,* 130 Ga. App. 277 (202 SE2d 837) (1973); but see *Connally v. State,*

237 Ga. 203 (1976).

2. The cross appeal presents a question of law. The Georgia Criminal Code prohibits and makes it an unlawful invasion of privacy for "any person in a clandestine manner to intentionally . . . record . . . the private conversation of another which shall originate in any private place." Code Ann. § 26-3001 (a). Exceptions are contained in Code Ann. §§ 26-3004 for a warrant, and 26-3006 which recites that nothing in § 26-3001 shall prohibit the recording of a message "when the *sender and receiver* thereof shall expressly or impliedly consent thereto or in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent." (Emphasis supplied.)

Mitchell bases the contentions of his cross appeal upon the construction of those provisions made by this court in *Cross v. State,* 128 Ga. App. 837 (1) (198 SE2d 338) (1973), that "The prohibitions of Code Ann. § 26-3001 on 'Unlawful Eavesdropping and Surveillance' relate to one who is not a party to the conversation." He argues that since he was a party to all the conversations under indictment no invasion of privacy occurred and there was thus no probable cause for issuance of the search warrant.

In *Cross* the defendant was indicted for bribery. He filed a motion to suppress evidence of the alleged crime that had been obtained from a conversation with a police officer wearing a concealed electronic transmitting device on his body. Two other officers received and recorded the conversation. Cross claimed that the tape recordings and testimony of the three police officers amounted to an illegal search and seizure of his conversation because there was no application for or issuance of a warrant authorizing electronic eavesdropping under Chapter 26-30 of the Criminal Code. While the two-judge majority in this panel decision concluded that, based upon United States v. White, 401 U. S. 745 (91 SC 1122, 28 LE2d 453) (1971), Code Ann. § 26-3001 prohibiting the interception of private conversations did not apply to a party to the conversation, it also stated that the conversation there would come under the exception of Code Ann. § 26-3006

since the message constituted the commission of a crime.

Judge Evans agreed that the conversation involved would come under the exception of Code Ann. § 26-3006 and concurred specially, also addressing the issue which now confronts us in the instant case; whether a party to a conversation may clandestinely record a conversation without violating Code Ann. § 26-3001 where the conversation does not come under the § 26-3006 exception. The majority in *Cross* held that there would be no violation of the statute and the recording would be admissible. Judge Evans did not agree, and we think his reasoning to be correct.

The special concurrence first points out that United States v. White, supra, was only a plurality opinion and not binding as precedent. Furthermore, "the federal authorities are not applicable here because the federal law is completely unlike the Georgia law. Title 28 USCA § 2511 (2) (c) (d) specifically provides that if *one* of the persons acts under color of law *and is a party to the conversation,* it is not unlawful for him to intercept such communication. But the Georgia law, as found in Code Ann. § 26-3006 (Ga. L. 1968, pp. 1249, 1333) provides that it is not unlawful to record the message *when both parties to the conversation consent; or where the conversation is itself a crime or in the furtherance of a crime.* Thus, it is readily seen that the federal law is much more liberal towards the government than is the state law, and we repeat that the federal authorities are inapplicable." 128 Ga. App. 842.

We note that Professor Agnor in his chapter on Constitutional Privileges in Georgia Evidence is in accord with this position, and also that the Supreme Court in *Humphrey v. State,* 231 Ga. 855, 862 (204 SE2d 603) referred to the concurring opinion in *Cross* with apparent approval. Agnor, Georgia Evidence, 115, § 7-8 (1976). Even so, the situation in *Cross* is distinguishable from the case at bar, and therefore not controlling, in that here the eavesdropping was not instituted by a law enforcement officer to apprehend a criminal by providing proof of a criminal act. In *Cross* there was a strong public policy argument in favor of obtaining competent and relevant evidence in a criminal trial and the procedures used

clearly complied with both the federal and state requirements of one-party consent. In the instant case the policy argument in favor of the privacy and integrity of a telephone conversation, not involving a crime, without the fear of having every word electronically recorded is equally strong.

The issue here is not the admissibility of the conversation in evidence against the party, but whether his right to privacy has been violated. To apply the analogy of the *Cross* court, that since a party can verbally repeat anything the other party has said to him he should therefore be allowed to record it, ignores the significantly greater probability of a privacy invasion when an electronic device is used. "Electronic aids add a wholly new dimension to eavesdropping. They make it more penetrating, more indiscriminate, more truly obnoxious to a free society." Lopez v. United States, 373 U. S. 427, 466 (83 SC 1381, 10 LE2d 462) (1963) (Brennan, J., dissenting). We conclude that such a fear was precisely the reason behind the broad prohibition against eavesdropping enacted by our legislature in Code Ann. § 26-3001 and the requirement for two-party consent in Code Ann. § 26-3006. Therefore Mitchell's argument that there was no invasion of privacy cannot be sustained.

3. Nor are we prepared to state that there was no probable cause for issuance of the search warrant because the information in the affidavits establishing the presence of the tapes in Mitchell's office was per se stale. The authorities cited by Mitchell involve drugs, rather than electronic equipment which is not so readily used or sold. "The determination of what time lapse is permissible depends on several factors, including the nature of the crime. There is no rule of thumb even for cases dealing specifically with narcotics . . ." *Tomblin v. State,* 128 Ga. App. 823, 825 (3) (198 SE2d 366) (1973). The test for probable cause is the totality of the evidence before the magistrate. *State v. Causey,* 132 Ga. App. 17, 20 (1) (207 SE2d 225) (1974). Here the magistrate considered sworn testimony from the district attorney concerning what he knew as well as the affidavits. The evidence indicated that the recording equipment was in Mitchell's office on September 15 and September 22, 1975, and that tapes had

been made. The warrant was issued on October 17. Considering the nature of the items that were the subject of the search and the totality of the circumstances surrounding the alleged crimes, we find that there was sufficient probable cause for the issuance of a search warrant. However, having previously ruled that the magistrate had such an affiliation with law enforcement as to disqualify him from issuing the search warrant, the recorded conversations obtained thereby must be excluded from evidence.

*Judgment affirmed as to the appeal and the cross appeal. Deen, P. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 13, 1976 — DECIDED SEPTEMBER 28, 1976 — REHEARING DENIED OCTOBER 19, 1976 —

*Randall Peek, District Attorney, Leonard W. Rhodes, Thomas O. Duvall, Jr., Assistant District Attorneys,* for the State.
*Donald A. Weissman,* for Mitchell.
*William H. Cate,* for Guhl.