59097. SHANER et al. v. THE STATE.

CARLEY, Judge.
    Appellants were convicted of possession of marijuana
with intent to distribute. They appeal, enumerating as
error the denial of their motion to suppress and the
admission into evidence, over objection, of certain
self-incriminating statements.
    1. The evidence produced on the motion to suppress
was as follows: Several days prior to June 27, 1979, an
officer of the Lanier County Sheriff's Department and a
GBI agent received a tip from a confidential source. The
informant was personally known to the officer but had
never supplied information before. The informant related
that on June 27, at approximately 12:30 or 1 a.m., a 1979
maroon Camaro with a "scope" or "windspoiler" on the
back would be passing through Lakeland, Georgia, on
Highway 129. The informant further related that this
vehicle would bear a Florida tag and would be coming
from Ocala, Florida. The informant said that Shaner, a
white male and a resident of Ocala, would be driving and
that Hylton, also a white male and Ocala resident, would
be a passenger. The informant also told the officer that a
weapon would be located under the driver's seat and that
the vehicle would contain 25 or 30 pounds of marijuana.
    At approximately 8 p.m. on the evening of June 26,
1979, two state patrol troopers who were on duty in the
area were ordered to report to the sheriff's office in
Lakeland. There, the two troopers were advised by the
officer and the agent as to every detail of the informant's
tip and were requested to be on the lookout for the
described vehicle and individuals. The troopers left on a
regular routine patrol of Highway 129. Sometime after
midnight, on the morning of June 27, the troopers spotted
a vehicle matching the description given them proceeding

north on Highway 129 toward Lakeland. Radar indicated that the vehicle was exceeding the posted speed limit. The troopers followed the car and made a routine traffic stop. The trooper asked the driver to step to the rear of the vehicle and verified that he was Shaner and his passenger was Hylton. The trooper then advised Shaner that "I was going to make a traffic charge against him for speeding and he would have to follow me to the Lanier County Sheriff's office, where I turned him over to the Lanier County Sheriff's office, which is required for an out-of-state vehicle."

At the sheriff's office the officer and agent sought the consent of Shaner and Hylton to a search of the vehicle. They did not consent. The judge of the small claims court was called and the following affidavit for a search warrant was made by the agent: "Agent Richard Deas of the GBI and Deputy Dane Bruce of the Lanier County Sheriff [sic] Office received information from a confidential informer that a maroon Camero [sic] with a scope on the back and operated by a Terry Lee Shaner would be coming through Lakeland, Ga. on 6-27-79 at about 12:30 A.M. or 1:00 A.M. and that the vehicle would be transporting about 20 or 30 pounds of marijuana. Informant stated that Terry Lee Shaner is a white male and would be coming from the Ocala, Fla. area. A vehicle matching this description was stopped on 6-27-79 at 12:50 A.M. by Troopers R. E. Joiner and Billy Exum of the Ga. State Patrol on U. S. 129 for speeding (60 mph in a 55 mph zone, see ticket # 47349, attached copy ). Vehicle was being operated by Terry Lee Shaner, address on license is 1102 S. E. 33 Ave., Ocala, Fla. Vehicle was traveling north of U. S. 129 which is in the direction of Lakeland, Ga." The agent was sworn and gave testimony in support of the issuance of the search warrant. After reading the affidavit and hearing testimony the magistrate determined that probable cause existed to search the vehicle for contraband and issued the warrant. The search produced a weapon, located under the driver's seat, and a quantity of marijuana which was in excess of 25 pounds in the trunk.

The trial court hearing the motion to suppress determined "that the affidavit and accompanying oral testimony submitted under oath to [the magistrate] were

sufficient to establish probable cause for the issuance of said search warrant and that the finding of probable cause by said [magistrate] was amply authorized by the evidence . . ." The court further found that probable cause existed for a warrantless search of the vehicle "resulting from the information supplied by the confidential informant-tipster and that together with the verification thereof by said officers justified said search and seizure." The motion was denied.

Shaner and Hylton urge that the finding that probable cause existed to search the vehicle was erroneous. Citing Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969), they argue that the tip of the informant and the affidavit based upon that tip were insufficient to demonstrate probable cause to search. Under those cases, "where hearsay such as an informer's tip is relied upon for probable cause, the sworn information placed before the justice of the peace must adequately set forth (1) the ' "underlying circumstances" necessary to enable the magistrate independently to judge of the validity . . .' of the information, and (2) the informant's credibility or reliability." Simmons v. State, 233 Ga. 429, 431-432 (211 SE2d 725) (1975). Thus, the issue presented here is whether the affidavit and sworn oral testimony satisfied this "two-pronged" test for the determination of probable cause.

We deal initially with the "underlying circumstances" or the "basis of the knowledge" prong. This requirement is designed to locate the original source of the incriminating information and to examine the validity or reliability of that *information*. This "prong" is not concerned with the overall "reliability" of the informant himself but seeks only to decide if the incriminating information, as opposed to the informant, is "reliable."

The affidavit and the sworn testimony in the instant case do not demonstrate that the magistrate was told *how* the informant obtained the information which incriminated Shaner and Hylton. Thus the magistrate did not know whether the accusation was based upon the informant's personal observation of the marijuana in the

car or upon mere rumor and reputation. Since the object of this "prong" is to insure that a "neutral and detached magistrate" is presented with sufficient facts so as to satisfy himself that the informant obtained the information in a reliable manner, it clearly is the better practice, if the informant has obtained his information through personal observation or contact or through some other "reliable" manner, to include this fact in the affidavit or so inform the magistrate considering its issuance. See, e. g., *Walker v. State,* 146 Ga. App. 572 (246 SE2d 690) (1978). However, the failure to include a statement of the informant's "basis of knowledge" in the affidavit or to specifically inform the magistrate of that basis by sworn testimony does not always cause the resulting warrant to be fatally defective. "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, 393 U. S. 410, 416, supra. Thus where, as here, neither the affidavit nor the sworn oral testimony demonstrates that the magistrate was informed of the manner in which the information was obtained by the informant, it is necessary to decide whether the affidavit and testimony concerning the informant's tip supplied the magistrate with a detailed report "of the sort which in common experience may be recognized as having been obtained in a reliable way ... " Spinelli v. United States, 393 U. S. supra at 417-418. "The detail provided by the informant in Draper v. United States, 358 U. S. 307, [(79 SC 329, 3 LE2d 327)] (1959), provides a suitable benchmark." Spinelli, supra at 416. Since the focus of this "prong" of Aguilar-Spinelli is the reliability of the manner in which the informant obtained his information, determination of whether the tip meets the "sufficient detail" test is based exclusively on what information came *from the informant* without reference, at this point, to independant verification of his information. " 'Corroboration should not be considered in

applying this [the "basis of knowledge"] test. Independent corroboration of some of the facts alleged by the informer may indicate truthfulness, i. e., that the tip is not completely fabricated, but does not suggest that the informer's knowledge was obtained through personal observation or other dependable manner. ' " Stanley v. State, 313 A2d 847, 862 (Md. App. 1974).

Applying the above stated analysis to the facts in the instant case and using the Draper decision as our "benchmark" we find the informant's tip was replete with details indicating the information was secured in a "reliable manner." The tip in this case, as in Draper, identified the individuals by name and appearance, related the location from whence they were traveling, pinpointed the approximate time of their arrival and the route they would take, described their means of transportation and specified the amount of contraband that would be transported. Compare, e. g., *Mitchell v. State,* 136 Ga. App. 2 (220 SE2d 34) (1975); *State v. Taylor,* 144 Ga. App. 270 (241 SE2d 50) (1977). And here, also as in Draper, this information was relayed well in advance of the occurrence, at a time when Shaner and Hylton were presumably still in Ocala, Florida. Compare *Mitchell v. State,* supra; *State v. Taylor,* supra; *Rohrig v. State,* 148 Ga. App. 869 (253 SE2d 253) (1979). This is not a tip which "could well have been based upon nothing more than a recent sighting of the defendant by the informant." *Mitchell v. State,* 136 Ga. App. 2, 5, supra. Rather "[a] magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." Spinelli v. United States, 393 U. S. 410, 417, supra. We, therefore, hold that the "basis for the informant's knowledge" prong of Aguilar-Spinelli was satisified in the instant case.

The second prong of Aguilar-Spinelli concerns the informant's overall "credibility" or his "veracity." This requirement seeks demonstration of a general proposition — that the informant himself, as opposed to the specific reliability of the incriminating information addressed in the first "prong," is a person upon whose truthfulness reliance may reasonably be placed. In other words, the reliable manner of the acquisition of the information

having been demonstrated, it must now be determined whether the individual supplying this "reliable" information is a truthful person. Obviously the informant's overall reliability may be shown by his past performance in giving information. See, e. g., *Cooksey v. State,* 149 Ga. App. 572 (254 SE2d 892) (1979). However, it is clear that an informant's lack of previous contact with the authorities is not fatal to his "veracity." *Meneghan v. State,* 132 Ga. App. 380, 381 (1) (208 SE2d 150) (1974). Nor does the fact that the informant is denominated as "confidential" rather than "reliable" in the affidavit control. *Keith v. State,* 238 Ga. 157 (231 SE2d 727) (1977). Yet, when, as here, the confidential informant has no history of prior contact with the authorities, the state in securing a warrant is obviously placed in the unenviable position of satisfying the "veracity" prong of Aguilar-Spinelli while at the same time protecting the confidentiality of the source of the information. Excessive revelation of the informant's veracity may compromise his confidentiality. However, this problem is not insoluble because there are methods by which the unidentified and untested informant's overall veracity may be shown. Unlike the first "prong" of Aguilar-Spinelli the focus of which is the "reliability" of the manner in which the *informant* secured his information and which may be satisfied by a demonstration that the tip was sufficiently detailed so as to infer that the information was reliably obtained, the informant's overall "credibility" is subject to independent verification and objective proof. If the tip is sufficiently detailed so as to show a reliable "basis for the informant's information" independent police work can corroborate the details of the tip and thus satisfy the second "veracity" prong. Cf. *State v. Perry,* 234 Ga. 842 (218 SE2d 559) (1975). "When independent police observations have verified part of the story told by an informant, that corroboration lends credence to the remaining unverified portion of the story by demonstrating that the informant has, to the extent tested, spoken truly. [Cit.] The verification helps to demonstrate his 'credibility.' Present good performance shows him to be probably 'credible' just as surely as does past good performance." Stanley v. State, 313 A2d 847,

860-861, supra. See also *Giles v. State,* 149 Ga. App. 263 (254 SE2d 154) (1979). In determining whether independent police corroboration of an unidentified and untested informant satisfies this second prong of Aguilar-Spinelli, "[o]nce again, Draper provides a relevant comparison." Spinelli v. United States, 393 U. S. 410, 417, supra. In the instant case, as in Draper and unlike Spinelli, the authorities corroborated much more than one small detail that had been provided by the informant. In pursuing the informant's tip, the officers discovered a car occupied by two men fitting the exact description, bearing a Florida tag, located exactly where indicated and at the time and on the date specified. After the vehicle was stopped for speeding, the identities of the driver and passenger were established and this further corroborated the informant. At this point the officers "had personally verified every facet of the information given [them] by [the informant] except whether [Shaner and Hylton] had accomplished [their] mission and had the [20 or 30 pounds of marijuana in the car]. And surely, with every other bit of [the informant's] information being thus personally verified, [the officers] had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information — that [Shaner and Hylton] would have [the marijuana] with [them] — was likewise true." Draper v. United States, 358 U. S. 307, 313, supra. The affidavit here recited this independent corroboration of the details of the informant's tip. The magistrate indicated on the motion to suppress that this information contained in the affidavit coupled with the sworn testimony of the agent as to the corroboration satisfied him that the informant, though unnamed and untested, had demonstrated his veracity. As this evidence or corroboration of the specific details of the tip adequately shows that "the informant had not been fabricating his report out of whole cloth," the second prong of Aguilar-Spinelli was satisfied. Spinelli v. United States, 393 U. S. 410, 417, supra. "The first determination [of the informant's trustworthiness] must be made by the issuing magistrate and we will give his decision great weight if the issue is raised on appeal." *Giles v. State,* 149 Ga. App. at 266, supra.

Thus, the evidence on the motion to suppress

supports the trial court's finding that the affidavit and sworn testimony presented to the magistrate satisfied the "two prong" Aguilar-Spinelli test and that the warrant issued on the basis thereof was based on probable cause. Therefore, appellant's Fourth Amendment rights were not violated and it was not error to deny the motion.

2. Arguments that the informant's tip failed to demonstrate that the information was not "stale" are without merit. *Danford v. State,* 133 Ga. App. 890 (212 SE2d 501) (1975).

3. Having found that the affidavit and sworn testimony established probable cause for the search, we do not address the argument that the trial court erred in finding the search would have been valid absent a warrant.

4. A Jackson-Denno hearing was held to determine the voluntariness of the incriminating statements made by Shaner and Hylton. We find no error in the trial court's determination that the statements were freely given after the Miranda warnings were given. *Patterson v. State,* 149 Ga. App. 438 (2) (254 SE2d 445) (1979).

*Judgment affirmed. Quillian, P. J., and Shulman, J., concur.*

ARGUED JANUARY 7, 1980 — DECIDED MARCH 4, 1980 —

*Wilton E. Stone, Jr.,* for appellants.

*Vickers Neugent,* District Attorney, *Charles R. Reddick, Lew S. Barrow,* Assistant District Attorneys, for appellee.