### 63835. PRESSEL et al. v. THE STATE.

QUILLIAN, Chief Judge.

Appellants, Robert Pressel and Jenny Tallant, appeal their conviction for possession of more than one ounce of marijuana. *Held:*

1. The first four enumerated errors address the legal sufficiency of the search warrant. (a) Deputy Sheriff Dudley of Morgan County personally appeared before Justice of the Peace Beckham and testified to the facts upon which the warrant was based. The J. P. entered a synopsis of that testimony on the affidavit attached to the warrant and had it sworn to by Dudley. Sheriff Burge was also present at the time of the taking of Dudley's testimony. All three were called and questioned in the hearing on the motion to suppress. There were discrepancies between what Dudley testified that he told the J. P. and what appeared on the affidavit. However, on the issue of probable cause to search the residence rented by the defendants, there was no doubt that Dudley informed the J. P. that he had a confidential informant who had provided him information in the past which had proven to be reliable, and the informant had seen

marijuana and a white powdery substance that he believed to be cocaine in the house within the past 24 to 72 hours. Dudley stated that he had the house under surveillance for the past several days and had contacted his informant on the afternoon before the warrant issued that night and was on the lookout for a U-Haul truck which was to be loaded with marijuana. While he had the house under surveillance, he overheard a radio call that a truck and a "Blazer" had been stopped in Morgan County with loads of furniture. Because Dudley was also investigating several burglaries he went to that location and found Robert Pressel and Jenny Tallant had been stopped because Pressel failed to stop at a stop sign. Pressel said he did not have his driver's license with him but it was in the "Blazer" following him — being driven by Jenny Tallant. The officers stopped Tallant and not only did she not have Pressel's driver's license, she did not have a license. Officer Dudley recognized Jenny Tallant's name as one of those given him by his confidential informant — the other name given him was Steve Tallant. Pressel testified that he had used the name Steve Tallant on the lease when he and Jenny Tallant leased the house in Morgan County. Following Pressel's arrest he was searched and the officer found a "little brown bottle that contained a white powder substance in it . . . It had a little spoon thing on top of it." Such a device can be used to "snort" cocaine. Pressel had reported a U-Haul truck stolen, and the officers discovered Tallant had been arrested in Gainesville and Pressel was searched when he arrived and had $16,000 taken from him — but it was later returned. Tallant had $3,700 in her purse when she was arrested. Dudley decided to get a search warrant as soon as possible because he was afraid Pressel and Tallant would make bond and destroy the drugs the informer had advised him were present in their house. "I felt like they suspected something was coming down and if I didn't get what I had right then, I was going to lose everything." Dudley and the sheriff met at the defendant's house and Dudley advised the sheriff what his informant had told him and it was decided to procure a search warrant. They went by the J. P.'s house, picked him up, and took him to his office in downtown Madison.

Although there were discrepancies between the testimony of Dudley as to what he had testified to before the J. P. and what appeared on the affidavit, Dudley, Sheriff Burge, and the J. P. who issued the warrant all testified as to the circumstances and were subject to a searching cross-examination. The trial court resolved the issue in favor of denying the motion to suppress. "[T]he trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. Lego v. Twomey, 404 U. S. 477 (1972) . . ." *Woodruff v. State,* 233 Ga. 840, 844 (213 SE2d 689);

*State v. Harris,* 246 Ga. 759 (1) (272 SE2d 719). Those findings denying the motion to suppress are supported by evidence and are not clearly erroneous.

(b) The source of the informant's information was established to be his presence in the defendant's house, and in the presence of both defendants. His reliability was adequately established by Dudley's testimony that the informant had given him information on a number of prior occasions, all of which were proven to be correct, and arrests had been made based on that information. Draper v. United States, 358 U. S. 307 (79 SC 329, 3 LE2d 327).

(c) Defendant contends the search warrant was not issued by a neutral and detached magistrate. He bases this assertion upon the fact of the presence of the magistrate at the scene of the search during the execution of the warrant. This court, in *Thomason v. State,* 148 Ga. App. 513 (251 SE2d 598), found that the conduct of an issuing magistrate of a warrant in permitting his automobile to be used to transport the search party to the site of the search, and observing the procedure during the search while conversing with the officers and the defendant, and thereafter issued arrest warrants for the defendants, was impermissible conduct because the requirement " 'that a warrant be issued by a neutral and detached magistrate requires severance and disengagement from activities of law enforcement.' " We also found "this was not an isolated incident but part of an ongoing practice . . . [which] conveys the impression that Judge McKeehan had 'thrown in' with officers of the law . . ." 148 Ga. App. at 514.

In the instant case there is evidence of this one isolated incident in which the magistrate was picked up at his home by police officers at approximately 2 a. m. in the morning, and transported in their car to his office where he heard the evidence and issued the warrant. Due to the urgent nature of the impending search, because Deputy Sheriff Dudley believed the defendants knew they were suspected and "if I didn't get what I had right then, I was going to lose everything," the officers apparently decided rather than delay the search by transporting the J. P. back to his home at that time, they took him with them to the scene of the search. The sheriff testified: "I would . . . just a speculation. I would say he moved around." Deputy Dudley testified: "Billy Beckham [the issuing magistrate] was there, but he wasn't searching." The only reasonable inference from the evidence is there was a valid reason for the J. P.'s presence—awaiting transportation home. There is no evidence that this is anything but an isolated incident. There was an affirmative showing he did not participate in the search, and when he testified as a witness, counsel for the defendant did not attempt to pursue the matter or establish

the extent of his participation, and now infers, speculates, surmises and theorizes what his conduct may have been. We have found no evidence that the J. P. was anything other than a neutral and detached magistrate in the issuance of this warrant, caught up in the exigencies of a rapidly developing search situation to prevent disposition or destruction of evidence said to be present by an informer. These enumerations of error are without merit.

2. Defendant alleges the trial court erred "in failing to order that the informant be interviewed in camera, in that the circumstances surrounding the alleged informant are so incredible as to raise considerable doubt as to his existence."

Throughout the trial counsel for the defendant expended considerable time in cross-examination of Deputy Sheriff Dudley in an attempt to establish the non-existence of the informer. Dudley steadfastly claimed his existence and defendant's counsel repeatedly referred to him as fictional. Dudley expressed his concern for the safety of his informant when counsel attempted to learn his identity. Counsel stated: "Your Honor, if he's seriously worried about the informant, I'll make this proposition to the court. That the court make an in camera inspection of Mr. Dudley and his informer out of the presence of the lawyers and the parties to the case where only you, the informant and Mr. Dudley and the court reporter are present . . . I will withdraw the motion to suppress if Your Honor, after thorough examination would assure me that he believed there was an informant who said substantially what this man [Dudley] has said he said."

Later, during the trial, counsel for the State asked Dudley if counsel for the defendant "made an offer to you and the Judge. . ." Dudley stated: "he wanted the Judge to meet with me and meet with my informant and if the Judge was convinced that I had an informant, Mr. Horn said that the Judge was such an honest man that he would withdraw his Motion to Suppress." Deputy Sheriff Dudley went to Eatonton on July 17 with Sheriff Burge and spoke to Judge Thompson, the Judge who had held the hearings on the motion to suppress, and the Assistant District Attorney, and told Judge Thompson "if he felt it was necessary that he really wanted to meet my informant I would have the informant meet with him in a motel room. . ." Defendant's counsel objected to any answer Judge Thompson gave and demanded the presence of Judge Thompson. Counsel's objection was sustained. However, it is clear that the police offered to the Judge who held the hearing on the Motion to Suppress, the opportunity to meet with and examine the informant. Thereafter, Judge Thompson denied the Motion to Suppress.

"Whether or not an informer really exists is a question of

evidence to be decided by the trial court after the officers have been thoroughly questioned and cross-examined." *Keith v. State,* 238 Ga. 157, 159 (231 SE2d 727); *McAllister v. State,* 157 Ga. App. 158, 159 (276 SE2d 669). We find no error in the trial court's failure to examine the informant *in camera.* Cf. *McAllister v. State,* 157 Ga. App. 158, 159, supra.

3. It was not error for the trial court to fail to require disclosure of the identity of the informant. The evidence in this case shows the informer was a mere tipster. Disclosure is not required. *Thornton v. State,* 238 Ga. 160 (2) (231 SE2d 729); *State v. Royal,* 247 Ga. 309, 312 (275 SE2d 646).

4. Defendant alleges the trial court erred "in arbitrarily denying appellant's Motion for an Independent Laboratory Analysis of the suspected contraband." Defendant presented a Motion for Independent Laboratory Analysis on May 14, 1981. On September 24, 1981, the trial court's order was filed, citing a regularly scheduled hearing and denial of defendant's motion to produce the decoy/informant, the Motion to Suppress, and defendant's demurrer. Trial was held on September 28, 1981 and prior to trial the court held a hearing on defendant's "Motion to Suppress, Motion in Limine." At the end of the hearing, after several matters had been discussed, counsel for defendant noted that "[i]n regard to a lab motion, on Monday a week ago when I discussed with [the assistant district attorney] the matter, it being for the first time clear that the Motion to Suppress was going to be denied, he mentioned that I had not advanced the Lab Motion. I told him I wanted to adhere to it . . . [He] said he considered I had abandoned it. I do not consider that I have abandoned it . . . Your Honor, it is costly to use an expert and I thought in this instance that I had a viable Motion to Suppress, still think I do. It is uneconomical for Defendants and for lawyers to spend a lot of time on motions if there is another good motion that will be responsive to the case, as the Motion to Suppress would be." The trial court ruled that the defendant had abandoned his motion for independent analysis. We agree.

It is clear that the counsel for defendant intentionally refused to assert his motion for independent analysis because of cost, until he received a denial on his motion to suppress. This was a matter of tactics or strategy. The motion was not presented until the morning of the day of trial. We will not disturb the trial court's ruling that defendant abandoned his motion.

5. We have thoroughly examined the remaining enumerations of error and found them to be without merit.

*Judgment affirmed. Shulman, P. J., concurs. Carley, J., concurs specially.*

193

*Al Horn, Barry Hazen,* for appellants.
*Joseph H. Briley, District Attorney, Al Martinez, Assistant District Attorney,* for appellee.

CARLEY, Judge, concurring specially.
I completely agree with the majority's holding affirming the conviction of the appellants. However, I want to make an additional comment with regard to Division 3 of the opinion. In Division 3, the majority holds that disclosure of the identity of the informant was not required because "the informer was a mere tipster." The appellants contend that the informant was not a mere "tipster." It is my opinion that even if the informer were not a mere tipster, the trial court did not err in failing to require disclosure of the identity of the informant. In *Thornton v. State,* 238 Ga. 160, 165 (231 SE2d 729) (1977) our Supreme Court relying upon Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1956), held that if the informer is not a "pure tipster," "the due process concept of fundamental fairness [requires] that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself." *Thornton v. State,* supra at 164. My review of the record indicates that there was sufficient evidence upon which the trial court could have found that the right of the accused to require disclosure did not outweigh "the public interest in protecting the flow of information to law enforcement officials." Thus, regardless of the status of the informer, the trial court did not err in denying the motion for disclosure.