## 64460. ROTH v. THE STATE.

SHULMAN, Presiding Judge.

A jury convicted appellant of possession of methaqualone and less than one ounce of marijuana. He now appeals, contending that the trial court erred in denying his motion to suppress the evidence discovered by police officers while executing a search warrant at appellant's home. We disagree with appellant's assertion and affirm his conviction.

According to the affidavit filed in support of the issuance of a search warrant, an undercover police officer accompanied Randy Love and Cheryl Bratlie to appellant's home in order to purchase methaqualone (quaaludes). While the officer and Love waited in the car, Bratlie went inside the residence and returned to the car with a plastic bag containing quaaludes. After the undercover officer gave her money, Bratlie reentered the dwelling and returned to the car. Upon Bratlie's subsequent arrest, she told the undercover officer she had obtained the contraband from "Terry" and proceeded to describe him. The search warrant was issued that evening and the search conducted pursuant thereto uncovered the marijuana and quaaludes.

In his sole enumeration of error, appellant maintains that the police officer's affidavit filed in support of the issuance of the search warrant was fatally defective because it did not establish the reliability of Cheryl Bratlie. See *Cain v. State,* 128 Ga. App. 146 (195 SE2d 797). However, appellant's assertion, even if correct, is immaterial because the affidavit, without Bratlie's statement, is sufficient to establish probable cause and justify issuance of the search warrant. Application of this "independent source" test was adopted by this court in *Rothfuss v. State,* 160 Ga. App. 863, 864 (288 SE2d 579), and we apply it here. Inasmuch as "the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the [allegedly] tainted

information, the evidence seized pursuant to the warrant is admissible." Id.

*Judgment affirmed. Quillian, C. J., concurs. Carley, J., concurs specially.*

DECIDED NOVEMBER 9, 1982.

*Jeffrey R. Sliz, James L. Kraemer,* for appellant.
*Bryant Huff, District Attorney, Johnny R. Moore, Stephen E. Franzen, Assistant District Attorneys,* for appellee.

CARLEY, Judge, concurring specially.

I completely agree with the majority's affirmance of the trial court's judgment based upon the finding that the affidavit was sufficient to support the issuance of the search warrant. However, unlike the majority, I do not believe that the "independent source" test enunciated in *Rothfuss v. State,* 160 Ga. App. 863, 864 (288 SE2d 579) (1982) is either applicable to, or necessary for the resolution of, this case. It is my opinion that the reliability requirements of Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969) are satisfactorily demonstrated so that *all* of the information attributable to Cheryl Bratlie and included in the affidavit can and must be considered. Thus, under my view of the case, it is unnecessary to decide the correctness of the majority's conclusion that "the affidavit, without Bratlie's statement, is sufficient to establish probable cause and justify issuance of the search warrant."

An analysis of the two-pronged test of Aguilar-Spinelli is set forth in *Shaner v. State,* 153 Ga. App. 694 (266 SE2d 338) (1980). The "underlying circumstances" or the "basis of knowledge" prong "is not concerned with the overall *'reliability'* of the informant himself but seeks only to decide if the incriminating information, as opposed to the informant, is 'reliable.' " *Shaner,* supra, 696. In the case at bar, this prong is adequately satisfied because, unlike the situation in *Shaner,* the magistrate was informed as to the "manner" in which the information was obtained by Ms. Bratlie. It was clear that Ms. Bratlie obtained the information by personal contact when she went to the residence of defendant and received the drugs. "The second prong of Aguilar-Spinelli concerns the informant's overall 'credibility' or his 'veracity.' " *Shaner,* supra, 698. It is true that here, as in *Shaner,* there is nothing to show that this informant ever previously supplied reliable information to the authorities. The absence of such a showing of "past" reliability is not surprising in view of the manner in which Ms. Bratlie unwittingly not only supplied information to be used

ultimately against appellant, but also created the basis for her own arrest. "However, it is clear that an informant's lack of previous contact with the authorities is not fatal to his 'veracity.' " *Shaner,* supra, 699. "Unlike the first 'prong' of Aguilar-Spinelli the focus of which is the 'reliability' of the manner in which the *informant* secured his information . . . the informant's overall 'credibility' is subject to independent verification and objective proof . . . [I]ndependent police work can corroborate the details of the tip and thus satisfy the second 'veracity' prong. [Cit.]" *Shaner,* supra, 699. In the instant case, the undercover police officer actually saw the drugs which Ms. Bratlie said she obtained from the specified residence. Therefore, this "verification" going to "reliability" of the informant demonstrates her credibility so that her statement to the officer after her arrest that she purchased the drugs from a described person at the specified address could be properly considered by the magistrate. The mere fact that the "independent verification" preceded in time the statement of the informant is immaterial. There was a sufficient basis upon which to issue a search warrant and there was no error in the admission of evidence procured pursuant thereto.