## 65258. LANG v. THE STATE.

BIRDSONG, Judge.

Gregory T. Lang was convicted by the trial court of trafficking in marijuana by possessing more than one hundred pounds, and of felony possession of drug-related objects. The conviction arises out of Lang's operation on his farm of a sophisticated indoor marijuana cultivation project consisting of approximately one thousand marijuana plants in a large metal building protected by an electric eye-beam alarm system and two additional large metal buildings under construction. The seizure of evidence under warrant exposed the potted plants, several large bags and boxes of harvested marijuana; and 4,125 soil cups in a "nursery" behind the building. The building was 60 feet by 135 feet, and 16 feet high. It was completely fiberglass insulated and was equipped with five 48-inch exhaust fans, six large gas heaters, eighty-six 1,000-watt mercury vapor lights suspended from the ceiling by steel cables, and ten automated control timers. Also seized from the building were soil test kits, pamphlets and records pertaining to planting schedules and planting soil and equipment.

The warrant under which this search was made was issued upon the sworn affidavit of GBI agent Gary Newman particularly describing the appellant, the farm premises, and the target buildings, and reciting: "And that the facts tending to establish the foregoing grounds for Issuance of Search Warrant are as follows: Tuesday, December 29, 1981, Gordon County Sheriff Pat Baker was contacted by a confidential informant. Said informant has proven reliable in the past by providing information leading to the arrest and conviction on drug charges of at least one suspect. Said informant has provided information on more than one previous occasion. His information has never proved to be untruthful. Sheriff Baker obtained the following information from said informant: Said informant has personally been on the property of Spring Lake Meadow Farm in the very recent past, prior to giving this information to Sheriff Baker. Greg Lang, operator of Spring Lake Meadow Farm, is presently storing marijuana in the above described building on said premises. This building and

surrounding property are protected by an outside alarm system (electric eye beams). On Monday, January 4, 1982, Investigator Lester Stuck, Gordon County Sheriff's Office, accompanied the Gordon County Building Inspector to the above described premises. Investigator Stuck observed the alarm system as described by the confidential informant on the premises. The Gordon County Building Inspector attempted to conduct a routine final inspection of the above described building. An individual identifying himself as Greg Lang denied the building inspector access to said building. Lang stated that the building was used for agricultural purposes. On Tuesday, January 5, 1982, the affiant received the above information from Sheriff Baker and Investigator Stuck."

Appellant Lang enumerates seven errors on appeal. In deciding the issues in this case, we have sifted out, as irrelevant, arguments and injection of evidence concerning other subsequent searches of Lang's residence and farm and other evidence of corroboration of the original search, since the conviction was based on the described evidence of marijuana cultivation seized under authority of the described affidavit alone and the information contained therein. *Held:*

1. Appellant contends the search warrant was invalid because the executing magistrate was not neutral and detached, a conclusion reached by appellant because the magistrate admitted, after first having denied, that at sometime in the past in an unrelated incident or incidents, he had signed blank warrants to accommodate an officer when he (the magistrate) was to be at a family dinner. Appellant contends this fact shows a close and biased or partial relationship with law enforcement officers sufficient to render the warrant invalid because the magistrate was not neutral and detached, as in *State v. Guhl,* 140 Ga. App. 23 (230 SE2d 22); *Baggett v. State,* 132 Ga. App. 266 (208 SE2d 23); and *Jackson v. State,* 150 Ga. App. 67 (256 SE2d 670). We find no merit in this enumeration. The incident suggested by appellant to show bias and partiality was an isolated incident or incidents in the past and there is no evidence except remote speculation that the magistrate's posture in issuing the search warrant in this case was not neutral and detached. *Pressel v. State,* 163 Ga. App. 188 (292 SE2d 553). Moreover, the evidence shows the sheriff, upon learning of any such blank warrants, had destroyed them and called them "taboo," thus negating any inference that special partial relationship existed between his office and the magistrate or that he permitted his officers and colleagues to obtain warrants signed in blank. No showing exists in this case that the magistrate who issued the warrant was not neutral and detached in the issuance of this warrant.

2. Appellant contends that the search warrant was without probable cause because the information (informant) was not shown to be reliable, there was no corroborating evidence to support the informant's allegations, and the information obtained from the informant was stale. None of these contentions has merit.

The informant was established as reliable, he having previously on more than one occasion given to the sheriff truthful information which, moreover, led to at least one conviction. *Shaner v. State,* 153 Ga. App. 694, 696-699 (266 SE2d 338). Compare *Fowler v. State,* 128 Ga. App. 501, 503 (197 SE2d 502); *Pickard v. State,* 152 Ga. App. 707 (3) (263 SE2d 679); see *Giles v. State,* 149 Ga. App. 263 (254 SE2d 154). Moreover, the information was sufficiently detailed to show that it was more than a mere casual rumor or accusation made on reputation, and stated that the informant had been on the property "in the very recent past" and that "Greg Lang is presently storing marijuana in the described building." *Collins v. State,* 161 Ga. App. 546 (287 SE2d 708); *Jones v. State,* 154 Ga. App. 21, 23 (267 SE2d 323). The information was, on its face and by its own terms, not stale.

Additionally, the credibility of the informant and the reliability of his information was corroborated by the officer. The deputy corroborated the information by arranging to accompany the county building inspector on an "inspection" onto property that was posted with "No Trespassing" signs at the junction of a paved county maintained road and the unpaved county maintained road that served as appellant's driveway; but the deputy merely sat in the car and observed the white metal building with electric-eye beam alarm system, which he later said did not look like any hay storage system he had ever seen. The officer also observed an electric-eye beam alarm system over appellant's driveway. He saw two more similar metal buildings under construction, and an electric-eye beam alarm system set up on a perimeter of those buildings, as had been suggested by the informant. The deputy was accompanying a county official on a route and on business as to which the appellant had no reasonable expectation of privacy. See *State v. Nichols,* 160 Ga. App. 386 (287 SE2d 53). The buildings the deputy observed were not dwelling houses and were not used as offices. *Giddens v. State,* 156 Ga. App. 258 (274 SE2d 595) (U.S. cert. denied). Moreover, the fact that "No Trespassing" signs were posted over the driveway is a technicality which does not negate what the deputy saw while accompanying the building inspector and does not render the otherwise valid search warrant invalid. *Dunbar v. State,* 163 Ga. App. 243 (292 SE2d 897). No unreasonable search and no seizure took place, only a visual inspection which, even if it was more "undercover" than appellant

would have liked, is not therefore unreliable or unlawful so as to render the search warrant one not based on probable cause. As to questions raised by appellant that the affidavit was infected by "hearsay on hearsay," see *Williams v. State,* 157 Ga. App. 476, 478 (277 SE2d 923).

3. Subsequent searches of Lang's residence and farm were not illegal; and, in any case, we need not address them as no evidence obtained thereby formed the basis of the conviction and any result of the searches was harmless beyond a reasonable doubt.

4. The trial court did not err in refusing to quash the indictment on grounds that the marijuana, except for 100 grams, was destroyed by law enforcement agents with approval of the district attorney, without notice to the appellant or his attorney; nor did the state fail to prove beyond a reasonable doubt that appellant possessed 100 pounds of marijuana.

Surely it would have been far wiser to notify the appellant and his attorney of the destruction of the contraband, especially since appellant was to be charged with trafficking, i. e., possession of more than 100 pounds of marijuana, and since as it happens the total 870 pounds of marijuana weighed contained some undetermined amount of trash, debris, and included stalks of plants that cannot be considered contraband (OCGA § 16-13-21 (16) (Code Ann. § 79A-802)). The practice of destroying evidence without prior notice to the accused has been soundly denounced (see United States v. Henry, 487 F2d 912), and with good reason for the state's protection as well as the defendant's. Still, we find no fatal prejudice in this destruction of all the evidence except 100 grams. The state crime laboratory forensic chemist and investigating officers testified the bags of processed marijuana, including trash and debris, weighed 144 pounds. It may be inferred beyond a reasonable doubt that the remainder of the total 870 pounds of marijuana, i. e., the plants including stalk (cut off above the roots), therefore weighed 726 pounds. The state's expert testified that in his opinion and estimate, approximately two-thirds of a marijuana plant is stalk, the inference thus being reasonable that the remaining one-third is chargeable marijuana under Code Ann. § 79A-802 (OCGA § 16-13-21 (16)); this amounts to 242 pounds of marijuana. As it happens in this case, the evidence is so overwhelming that appellant possessed more than 100 pounds of marijuana, that the destruction of all but 100 grams without notice to appellant or his attorney, even if it was erroneous as regards the appellant, was harmless beyond a reasonable doubt (see *Hamilton v. State,* 239 Ga. 72, 77 (235 SE2d 515)), and if only by accident, did not prevent the state from proving possession of 100 pounds.

5. Finally, appellant contends the trial court erred in refusing to quash the indictment on grounds that defendant was not permitted a full and fair hearing on his motion to suppress.

This argument is based upon an irregularity in procedure. The original indictment in this case was quashed at the pretrial motions hearing, because the indictment did not contain the names of the grand jurors. The trial court offered to dismiss appellant's motion to suppress "with prejudice" (although this threat was certainly empty, since due process could not permit appellant to be denied a motion to suppress hearing upon a subsequent reindictment). Appellant contends the trial court was without jurisdiction to hear the motion to suppress, since the indictment had been quashed; but this is not true, since we can find no clear authority for it (see, e. g., OCGA § 17-5-30 (Code Ann. § 27-313)) and because this trial court did have jurisdiction of the case, including preliminary hearings and habeas corpus proceedings since Lang's arrest. Moreover, proceeding with the suppression hearing at this point was as much to appellant's advantage as to any disadvantage, since as the trial judge aptly pointed out, if the suppression hearing resulted in the evidence being suppressed, then the state would have nothing to show the grand jury to reindict. The appellant proceeded with the motion to suppress. Subsequently, appellant retained other counsel, who after re-indictment, moved to reopen the entire suppression proceedings and hear it all over again. He was refused, but he was allowed to reopen the evidence on the question of neutrality of the magistrate. We see no harm or illegality in the trial court's refusal to provide another complete motion to suppress. Appellant has shown nothing new, except what he was allowed to relitigate, which would raise the question of error. The search warrant and affidavit speak for themselves. Appellant's previous attorney made a fair and complete examination of the evidence; the record was before the trial court on reindictment. He saw no error in it and neither do we. And as far as the argument that the trial court technically did not have jurisdiction to hear the motion after the first indictment was quashed (see *Yarbrough v. State,* 151 Ga. App. 474 (260 SE2d 369)), we will not reverse, for to do so would be a perversion of justice. *Hamilton v. State,* supra.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JANUARY 31, 1983 —
REHEARING DENIED MARCH 2, 1983 —

*Mark J. Kadish, Rhonda A. Brofman,* for appellant.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney,* for appellee.

ON MOTION FOR REHEARING.

Appellant Lang contends this court erred in concluding that the state had proved trafficking in at least 100 pounds of marijuana and that the destruction of the contraband without notice to the defendant was therefore harmless (see Division 4 of opinion). Appellant directs our attention to OCGA § 16-13-32 (former Code Ann. § 79A-811.1) for the proposition that not merely the stalks, but "certain seeds, fiber and oil from the plant should not be included in the weight"; and since there was no testimony as to how much of the marijuana, excluding stalk, consisted of other parts which cannot be considered contraband, the state could not establish trafficking in 100 pounds.

We do not find that OCGA § 16-13-32 (Code Ann. § 79A-811.1) excludes "certain seeds, fiber and oil from the plant" as contraband. However, OCGA § 16-13-21 (16) (Code Ann. § 79A-802) provides: " 'Marijuana' means all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include samples as described in subparagraph (3)(P) of Code Section 16-13-25 (Code Ann. § 79A-806) (chemically extracted and synthetically derived THC, *Aycock v. State,* 146 Ga. App. 489 (246 SE2d 489)) and shall not include the mature stalks of such plant, fiber produced from such stalks, oil, or cake (see *Aycock,* supra, pp. 491-493), or the completely sterilized samples of seeds of the plant which are incapable of germination." The evidence shows that the forensic expert and officers cut the approximately 1,000 plants at the base of the stalks and placed these plants in boxes. The boxes contained "leafy materials," that is, only plants, two-thirds of which was estimated to be stalk. There was no evidence that any processed material such as "oil or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination," was placed in the boxes. Only cut leafy plants were placed in the boxes; the total weight of these was 726 pounds, two-thirds of which was stalks, leaving 242 pounds of leafy material identified as marijuana. Moreover, in addition to this 242 pounds of leafy material (cut plants) were fifteen plastic bags and boxes containing already processed marijuana and some undetermined amount of trash and debris, and weighing 144 pounds, which we did not include in our determination that the state had proved beyond a reasonable doubt the offense of trafficking in excess of 100 pounds of marijuana (OCGA

§ 16-13-31 (c) (Code Ann. § 79A-811)). We do not think any remotely reasonable doubt exists in this case that there was proved at least 100 pounds of chargeable marijuana, excluding chemically extracted or synthetically derived THC (*Aycock v. State,* supra) and "the mature stalk of such plant, fiber from the stalks, oil or cake or the completely sterilized seeds of the plant incapable of germination." See *Aycock,* supra.

Appellant further contends we erred in our holding in Division 5 of the opinion, in refusing to find he was denied a full and fair motion to suppress hearing upon a proper indictment. The full motion to suppress hearing was held notwithstanding the fact that the indictment under which appellant was charged, had just been quashed. Appellant contends the trial court was then without jurisdiction to proceed with the motion to suppress. Appellant concedes that his point, that the trial court which quashed the first indictment did not have jurisdiction to hear the motion to suppress, and hence the motion to suppress hearing was a nullity, is an issue of first impression. OCGA § 17-5-30 (c) (Code Ann. § 27-313) provides: "The motion [to suppress] shall be made only before a court with jurisdiction to try the offense. If a criminal accusation is filed or if an indictment or special presentment is returned by a grand jury, the motion shall be made only before the court in which the accusation, indictment, or special presentment is filed and pending." The code section means simply that the ruling of "another judge in another jurisdiction on another motion to suppress" the same evidence will not be controlling in a subsequent prosecution of the offense. *Aikens v. State,* 143 Ga. App. 891 (240 SE2d 117).

Section 17-5-30 (Code Ann. § 27-313) merely provides "*If* a criminal accusation is filed or *if* an indictment or special presentment is returned by a grand jury, the motion shall be made only before the court in which the accusation, indictment or special presentment is filed and pending" — i. e., the motion to suppress cannot be filed in another court (emphasis supplied). In *Cook v. State,* 141 Ga. App. 241 (233 SE2d 60), we held that evidence once suppressed cannot be reintroduced as to a second indictment; obviously the evidence in that case was suppressed before the second indictment was "filed and pending," but the suppression was still valid for the obvious reason that if the evidence is wrongly obtained, it is not rendered admissible by a reindictment. The same reasoning should apply where the motion to suppress is denied, for the state as well as the defendant ought to be entitled to the finality of a ruling on the propriety of a search. If the search and seizure is valid for one indictment, it is valid for all. As to a reindictment or second indictment, it makes no substantive difference if the evidence was ruled admissible when a

first indictment was void, or was merely later dismissed. If we followed appellant's reasoning — that the subject indictment must be pending and valid when the motion to suppress is heard — a motion to suppress ruling would be without force where the defendant, or other persons, are later indicted for other crimes arising out of the same conduct and provable by the same evidence. In that case a ruling on a motion to suppress would never be final. Every indictment or prosecution, for every co-defendant, would require a new hearing on a new motion to suppress the same evidence. On a subsequent indictment or reindictment, there is no reason of substance to challenge the previous ruling on the question of evidence, merely because the instant indictment was not pending when the ruling was made. The appellant does not have a constitutional right to what he claims, but only to be protected from wrongful search and seizure; and the procedure in this case did not violate that right. Appellant would have us elevate procedure over substance. Appellant appeared before the instant court answering an indictment alleging a felony. He does not contend the court lacked jurisdiction over the person or offense, at least until the indictment was quashed for a procedural deficiency. Had the trial court ruled on all appellant's other motions prior to ruling on the motion to quash, Lang could hardly argue that the court did not have before it an indictment for a crime and a person accused thereof. We will conclude that the statutory provisions were satisfied in that the motion to suppress was presented to a court which had before it an indictment and jurisdiction to try the offense. The grant of the quashing motion did not deprive the court of jurisdiction, but simply placed the burden upon the state to perfect the indictment or suffer dismissal.

The reasoning of what we say can be most easily illustrated in this case, where the appellant is unable to show any harm or prejudice or error by the fact that the motion to suppress hearing was held after the defective indictment was quashed and before a valid indictment was filed against him. If any real harm is shown in a case such as this, we will not hesitate to correct the error; but this evidence in this case being properly admissible, it would do violence to justice to exclude it merely for breach of procedure.

*Motion for rehearing denied.*